In the Matter of CHELSEA BB. and Others, Children Alleged to be Neglected. ESSEX COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CORRINE DD., Appellant. KATHRYN DELL, as Law Guardian, Appellant. [825 NYS2d 551]—

Spain, J. Appeal from an order of the Family Court of Essex County (Lawliss, J.), entered September 1, 2004, which, inter alia, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the children in respondent's care to be neglected.

As relevant to these proceedings, respondent is the mother of three children, Ryan CC. (born in 1986), Charles CC. (born in 1987) and Clifford CC. (born in 1989), and respondent's boyfriend is the father of three children, Chelsea BB. (born in 1988), Christopher BB. (born in 1991) and Julie BB. (born in 1993). All of the children resided with respondent and her boyfriend during the period leading up to the instant proceedings. It is undisputed that respondent, although not their biological parent, was a person legally responsible for the care of the boyfriend's children. On December 12, 2003, respondent was involved in an altercation with Chelsea which led to the child's temporary removal—upon the consent of her father—from the household. Petitioner initiated this proceeding, alleging that respondent, based upon conduct not limited to that altercation, had neglected all six of the children. A separate neglect petition was filed against the boyfriend, also naming all of the children, and a single law guardian was assigned to represent them.

On December 24, 2003, Family Court presided over a Family Ct Act § 1027 hearing held at petitioner's request wherein it was determined that all three of the boyfriend's children should be placed temporarily in the care of their biological mother. While respondent's children were not the subjects of petitioner's section 1027 hearing request, they were—at the conclusion of the hearing—temporarily placed in petitioner's custody. Respondent and her boyfriend submitted applications for the return of their respective children, and a hearing pursuant to Family Ct Act § 1028 was held on January 8, 2004. While denying the boyfriend's application, Family Court granted respondent's application and returned her children subject to, among other things, supervision by petitioner and an order of protection directing that the boyfriend stay away from her children. The court also heeded the request of the Law Guardian that a separate law guardian be appointed for respondent's children.

The petition against respondent alleged acts constituting neglect by her on a number of different occasions. After a fact-finding hearing that commenced in April 2004, Family Court concluded that, although not all of the allegations of neglect against respondent were proven, all six of the subject children had been neglected by respondent. Respondent and the Law Guardian representing respondent's children now appeal.

Family Court's determination that respondent neglected the children is supported in the record. "In order to establish neglect, petitioner must show by a preponderance of the credible evidence that the child has been harmed or threatened with harm" (*Matter of Antonio NN.*, 28 AD3d 826, 827 [2006] [citations omitted]). As pertinent here, a neglected child is one "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent or other person legally responsible for his [or her] care to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof, including the infliction of excessive corporal punishment" (Family Ct Act § 1012 [f] [i] [B]). Here, the record evidence supports Family Court's conclusion that respondent's boyfriend used excessive corporal punishment against his daughter Julie on January 17, 2002 and that respondent's presence and role during that incident warranted a finding of neglect against her for her failure to intervene and protect that child (*see Matter of Kim HH.*, 239 AD2d 717, 719 [1997]). The court's determination as to the events of January 2002, despite the passage of time between the incident and the petition, should not be disturbed (*see Matter of Frank Y.*, 11 AD3d 740, 742 [2004]).

Next, Family Court's neglect determination, as a result of respondent's behavior on March 31, 2003 with regard to Chelsea, is also supported in the record. Respondent admitted that she was involved in an altercation with Chelsea on that date and that she had a belt in her hand, but denied hitting the child. Inasmuch as Family Court's determination regarding this incident, despite conflicting testimony, was based on its belief that the teenager's sworn testimony together with the additional testimony offered by petitioner was more credible than that offered by respondent, such determination should not be disturbed (*see Matter of Ida EE.*, 31 AD3d 923, 924-925 [2006]). In contrast, however, Family Court's determination as to Julie, based upon the events of that same day, should be modified as the record lacks evidence suggesting that Julie was impaired or in danger of becoming impaired at any time during that occurrence (*see Matter of Justin O.*, 28 AD3d 877, 879 [2006]).

We also uphold Family Court's determination regarding the altercation on December 12, 2003 between respondent and Chelsea while the other five children were present. On that date, after Chelsea disobeyed respondent over a glass of milk, respondent grabbed her by the arm and told her to go to her

room and when Chelsea refused to do so, respondent pulled the chair on which Chelsea was sitting until Chelsea fell out of it, started slapping at Chelsea's head and ultimately attempted to drag Chelsea across the floor and then up the stairs by her hair. When Chelsea tried to use the phone and to flee the house, respondent directed her three children to stop her. While respondent's version of the events is strikingly different, petitioner's interviews with the other five children support the conclusion that there was a protracted and heated verbal and physical altercation as described by Chelsea. In our view, given the history of the use of violence as a means of discipline in this household, this altercation—far from a single incident gone awry—exposed the other children to the inappropriate use of physical punishment causing such a harmful impact on them to sufficiently support a finding of neglect as to all six children (see *Matter of Richard T.*, 12 AD3d 986, 987-988 [2004]; *Matter of Catherine KK.*, 280 AD2d 732, 734-735 [2001]).

While respondent's contentions regarding the fairness of her treatment during the Family Ct Act § 1027 hearing and the propriety of the temporary placement of her children thereafter are moot in light of the subsequent final fact-finding and dispositional order (see *Matter of Frank Y., supra* at 743), we are sufficiently troubled by these events to further comment upon them. First, it is clear that respondent had not received any prior notice that Family Court would consider the removal of her children until the court announced its intention to so proceed at the beginning of the section 1027 hearing,[1] and she did not receive notice of her right to counsel until the hearing was underway. Under such circumstances, it was error for the court to proceed without giving her an opportunity to seek out an attorney or to apply for the assignment of an attorney.[2] Moreover, given the complexity of the respective petitions and the allegations and the clear conflicting interests among the children, Family Court should have appointed a separate law guardian for respondent's children at the outset.

Following the Family Ct Act § 1027 hearing, Family Court—due to a paucity of evidence of any real conflict between respondent and her children—continued respondent's children in her care and issued an order of protection prohibiting the boyfriend's

---

**1.** Reasonable efforts must be made to inform parents in advance of such a hearing of their right to be present and their right to be represented by counsel at the hearing "including procedures for obtaining counsel, if indigent" (Family Ct Act § 1023).

**2.** Subsequent to the Family Ct Act § 1027 hearing, respondent applied for the assignment of an attorney and ultimately was assigned an attorney who represented her at a Family Ct Act § 1028 hearing, 15 days later.

contact with them. However, upon subsequently learning that five of the children were with respondent's college age daughter en route to New Jersey to a Christmas gathering with respondent's family, the court—based upon its assumption that this was respondent's attempt to avoid their possible removal—demanded their immediate return to the courthouse assisted, if necessary, by law enforcement to stop the car. Upon their return soon thereafter, the court—without further proceedings—decided to "reconsider" its determination and ordered that respondent's children be temporarily placed with petitioner. In the absence of any evidence in the record regarding subterfuge on the part of respondent or any new risk to the children, the court's strong reaction and reversal of its decision were unwarranted, causing unnecessary trauma to respondent's children and their needless removal on the eve of their planned holiday.[3]

Cardona, P.J., Carpinello, Rose and Lahtinen, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as found that respondent neglected Julie BB. during the incident of March 31, 2003, and, as so modified, affirmed.

---

**3.** Notably, respondent's children were returned to her after the subsequent Family Ct Act § 1028 hearing subject to an order of protection and conditions which could have been easily crafted at the Family Ct Act § 1027 hearing.