■ In the Matter of Mitchell WW., a Child Alleged to be a Neglected. Columbia County Department of Social Services,

Respondent; ANDREW WW., Appellant, et al., Respondent. [903 NYS2d 553]—

Peters, J.P. Appeal from an order of the Family Court of Columbia County (Nichols, J.), entered May 21, 2009, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondents' child to be neglected.

Respondents, Andrew WW. (hereinafter the father) and Judith WW. (hereinafter the mother), are the parents of a son (born in 2002). In 2008, petitioner commenced a neglect proceeding against the mother alleging that she had threatened to commit suicide in the presence of the child and was abusing illegal drugs. Family Court issued an order of protection prohibiting contact between the mother and the child and awarded custody to the father. Shortly thereafter, petitioner commenced the instant proceeding against respondents alleging, among other things, that the father was abusing the mother's prescription medication. At the initial appearance on that petition, the father waived his right to counsel and Family Court issued a temporary order of removal placing the child with his maternal grandmother and her husband. Following a hearing pursuant to Family Ct Act § 1027, at which the father proceeded pro se, Family Court continued the child's placement and entered an order of protection against the father in favor of the child.

Upon a fact-finding hearing, Family Court sustained the petition of neglect against the father, finding that he abused, and inappropriately solicited and obtained, prescription medication from the mother, failed to engage in an appropriate substance abuse program and provided a program of alcohol treatment to a self-admitted alcoholic within the family home while the child was present.[1] After a dispositional hearing, the child was placed under the guardianship of his maternal grandmother. The father now appeals.

The father initially claims that Family Court erred in permit-

---

1. The mother entered admissions to providing the father with 20 Oxycontin pills from her prescription, as well as attempting to provide him with 30 of such pills on a separate occasion, received an adjournment in contemplation of dismissal and agreed to a voluntary placement of the child with her mother and stepfather.

ting him to represent himself at the removal hearing. We disagree. "The decision to permit a party who is entitled to counsel to proceed pro se must be supported by a showing on the record of a knowing, voluntary and intelligent waiver of the right to counsel" (*Matter of Anthony K.*, 11 AD3d 748, 749 [2004] [citations omitted]; *accord Matter of Isiah FF.*, 41 AD3d 900, 901 [2007]; *see Matter of David VV.*, 25 AD3d 882, 883-884 [2006], *lv denied* 12 NY3d 711 [2009]). At the initial appearance, after Family Court advised the father of his right to counsel, the father stated his desire to represent himself. Before permitting him to do so, Family Court questioned the father about his education and work experience, explained that proceeding pro se would put him at a "significant disadvantage" without training in the law, and advised him that he would be bound by the same rules of law and procedure applicable to an attorney. The court further explained the nature of the petition filed against him and the legal ramifications of a finding of neglect, and advised him that neither petitioner, the attorney for the child nor his wife's attorney would be representing his interests. The father confirmed his understanding of the consequences and perils of self representation, denied the allegations in the petition and proceeded to represent himself at the removal hearing the following day. Under these circumstances, we are satisfied that the father's "decision to proceed pro se was an informed and voluntary one made with full awareness of the risks inherent in representing himself" (*Matter of Bombard v Bombard*, 254 AD2d 529, 530 [1998], *lv denied* 93 NY2d 804 [1999]; *see Matter of Isiah FF.*, 41 AD3d at 901-902; *Matter of Anthony K.*, 11 AD3d at 749-750; *Matter of Bauer v Bost*, 298 AD2d 648, 650 [2002]).[2]

The father next asserts that Family Court committed evidentiary errors at the removal hearing. However, by failing to object to any of the purported errors he now raises, he has not preserved these issues for our review (*see Matter of Hobb Y.*, 56 AD3d 998, 1000 [2008]; *Matter of Constance NN.*, 47 AD3d 986, 986 [2008]). In any event, the father's arguments in this regard are rendered moot by the final fact-finding and dispositional orders (*see Matter of Chelsea BB.*, 34 AD3d 1085, 1088 [2006], *lv denied* 8 NY3d 806 [2007]; *Matter of Frank Y.*, 11 AD3d 740,

---

**2.** Despite the father's suggestion that Family Court was required to, sua sponte, appoint standby counsel to aid him in the event that he changed his mind about proceeding pro se, he has no right to such a hybrid form of representation (*see People v Mirenda*, 57 NY2d 261, 265 [1982]). Rather, the assignment of standby counsel is a matter of discretion upon the request of a party, and no such request was made by the father here (*see id.* at 266; *see also People v Rodriguez*, 95 NY2d 497, 501-502 [2000]).

743 [2004]; *Matter of Tantalyn TT.*, 115 AD2d 799, 800 [1985]), which were predicated solely on evidence introduced at the fact-finding hearing (*compare Matter of Eryck N.*, 17 AD3d 723, 725 [2005]).

Turning to the father's challenge to the finding of neglect, such a finding will be sustained if there is a showing by a preponderance of the evidence (*see* Family Ct Act § 1046 [b] [i]) that the child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the parent's failure to exercise a minimum degree of care in providing the child with proper supervision or guardianship (*see* Family Ct Act § 1012 [f] [i]; *Nicholson v Scoppetta*, 3 NY3d 357, 368 [2004]; *Matter of Stephiana UU.*, 66 AD3d 1160, 1161 [2009]). "Significantly, a finding of neglect need not be based upon actual injury or impairment, but only an imminent threat that such injury or impairment may result" (*Matter of Shalyse WW.*, 63 AD3d 1193, 1195-1196 [2009], *lv denied* 13 NY3d 704 [2009] [citations omitted]; *see Matter of Xavier II.*, 58 AD3d 898, 899 [2009]; *Matter of John QQ.*, 19 AD3d 754, 756 [2005]). In assessing whether there has been a failure to exercise a minimum degree of care, "parental behavior must be evaluated 'objectively,' in light of whether 'a reasonable and prudent parent [would] have so acted, or failed to act, under the circumstances then and there existing' " (*Matter of Rebecca KK.*, 51 AD3d 1086, 1087 [2008], quoting *Nicholson v Scoppetta*, 3 NY3d at 370; *see Matter of Chelsea M.*, 61 AD3d 1030, 1031 [2009]).

Applying these principles, we conclude that petitioner established the father's neglect by a preponderance of the evidence. Testimony from one of petitioner's caseworkers and the father himself established that the father permitted a friend with an alcohol addiction to stay at the family house, often overnight, for the purpose of treating his alcohol problem. As part of this "detox" program, the father would provide this individual with one to three beers a day, depending on the severity of his physical withdrawal symptoms, and would monitor his alcohol consumption. Notably, the child was present in the home while this "detox" was taking place.

More significantly, evidence was presented that the father abused and misused both his own, as well as his wife's, prescription medication, and failed to follow through with substance abuse counseling and treatment. Although the father had his own prescription for Oxycontin, a very strong and highly addictive opiate-based painkiller, he admitted to also taking the mother's Oxycontin at times. Furthermore, the child's maternal

grandmother testified regarding an incident where she and her husband discovered an envelope in the child's laundry addressed to the father which contained approximately 30 Oxycontin pills. When the grandmother confronted the mother, she stated that the father demanded that she send the pharmaceutical with the child's belongings and threatened that she would never see the child again if she did not comply. No reasonable and prudent parent would request that these pills be placed in a child's belongings given the potential for the child to gain access to them. The father's conduct in this regard presented an imminent risk of physical harm to the child (*see Nicholson v Scoppetta*, 3 NY3d at 370-371). Moreover, a caseworker testified that the father ingested Oxycontin by snorting it and possessed a grinder for that purpose. Although the father denied such conduct, Family Court specifically found his testimony to be incredible and we accord great deference to the court's credibility determinations where, as here, they are supported in the record (*see Matter of Alaina E.*, 33 AD3d 1084, 1086 [2006]; *Matter of Collin H.*, 28 AD3d 806, 808 [2006]; *Matter of Christine II.*, 13 AD3d 922, 923 [2004]). Taken as a whole, the foregoing evidence provided a sound and substantial basis to support Family Court's finding of neglect (*see Matter of Lindsey BB. [Ruth BB.]*, 70 AD3d 1205, 1207 [2010]; *Matter of Justin J.*, 25 AD3d 1031, 1033 [2006]).

Finally, Family Court did not abuse its discretion in requiring visitation to be supervised by petitioner or an agency approved by petitioner, rather than by a third party. " '[I]t is well settled that the standard to be applied in determining issues of visitation is the best interest of the child' " (*Matter of Larry v O'Neill*, 307 AD2d 410, 411 [2003], quoting *Matter of Mix v Gray*, 265 AD2d 692, 693 [1999]; *see Matter of Hobb Y.*, 56 AD3d at 999). Here, although Family Court permitted the child's maternal grandparents to supervise visitation following the removal hearing, the court subsequently concluded that, based on the credible evidence presented at the fact-finding hearing regarding the father's substance abuse problem, the child was at risk of harm even under the supervision of a third party. Family Court found it necessary that visitation be supervised by petitioner or an agency approved by petitioner in order to ensure the supervisor's ability "to deal with someone under the influence of medications." Furthermore, prior to Family Court's disposition regarding visitation, the child's attorney revealed to the court that the father had recently been charged with driving under the influence, which was allegedly his third offense, and urged that this behavior further demonstrated a concern regarding third-party supervision. On this record, we find no basis to

disturb Family Court's determination that the child's best interests would be served by requiring that visitation be supervised by petitioner or an approved agency (see Matter of Hardy v Short, 244 AD2d 669, 670 [1997]; see also Matter of Taylor v Fry, 47 AD3d 1130, 1132 [2008]).

Rose, Stein, McCarthy and Garry, JJ., concur. Ordered that the order is affirmed, without costs.