■ In the Matter of SAMUEL DD., a Child Alleged to be Neglected. ALBANY COUNTY DEPARTMENT FOR CHILDREN, YOUTH

---

AND FAMILIES, Respondent; MARGARET DD., Appellant. [916 NYS2d 366]—

Stein, J. Appeal from an order of the Family Court of Albany County (M. Walsh, J.), entered April 20, 2010, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's child to be neglected.

Respondent is the mother of Samuel DD. (born in 2001). Following receipt of a report through the New York State Central Register regarding the child "acting out in school, his mental health concerns, making suicidal statements and taking actions to hurt himself," petitioner commenced this proceeding based upon, among other things, respondent's failure to provide the child with necessary medical treatment for his behavioral and mental health problems, educational neglect and respondent's own mental health problems that allegedly impaired her ability to care for the child. Family Court issued a temporary order of protection, directing respondent to, among other things, cooperate with getting a mental health assessment for herself and follow any recommendations and arrange for an evaluation of the child and follow the recommendations of the evaluator.*

In July 2009, Family Court granted petitioner's application for removal of the child from respondent's custody, pursuant to Family Ct Act § 1027. Respondent then sought return of the child, but subsequently agreed to withdraw her application and allow the child to remain in foster care in order for him to obtain appropriate medical attention. Despite respondent's agreement to this arrangement, she then refused to sign a consent form to enable the child to receive medication. Therefore, Family Court held a hearing in November 2009, after which it denied respondent's application based, in part, upon her failure to comply with the temporary order of protection. Following a fact-finding hearing on the neglect petition in January 2010, Family Court found the child to be neglected. An order of disposition was entered in April 2010, placing respondent under petitioner's supervision for a period of one year and continuing the child's placement with petitioner. Respondent now appeals from that order and we affirm.

In order to establish neglect, petitioner was required to show,

---

* Although the record does not contain a copy of the temporary order of protection, specific references by Family Court to such order and to the foregoing provisions are set forth in the record.

by a preponderance of the evidence, "that [the] child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired . . . [as] a consequence of [respondent's] failure . . . to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (*Nicholson v Scoppetta*, 3 NY3d 357, 368 [2004]; *see* Family Ct Act § 1012 [f] [i] [A]; § 1046 [b] [i]; *Matter of Krista LL.*, 46 AD3d 1209, 1210 [2007]). In determining whether a parent is exercising a minimum degree of care, the parent's behavior "must be evaluated 'objectively,' in light of whether 'a reasonable and prudent parent [would] have so acted, or failed to act, under the circumstances then and there existing' " (*Matter of Rebecca KK.*, 51 AD3d 1086, 1087 [2008], quoting *Nicholson v Scoppetta*, 3 NY3d at 370; *accord Matter of Mitchell WW. [Andrew WW.]*, 74 AD3d 1409, 1412 [2010]).

The record here contains ample evidence that the child has engaged in extreme behavior which presents a danger to himself and others. After being removed from his previous school due to an altercation, the child was enrolled in North Albany Academy for a three-month program in order to give him a smaller and more individual learning environment. The detailed records kept by the child's teachers and/or their assistants reflected that the child exhibited behavioral issues on most days and was suspended for his behavior. Among other things, the child attempted to place objects in electrical outlets, attempted to saw through a computer power cable with a key, tried to cut his own tongue with a pair of scissors, stood on top of a file cabinet, attempted to tip a bookcase over on top of himself and made other attempts and threats to hurt himself. In addition, he engaged in various acts of violence toward other students and school staff. It was necessary to physically restrain the child numerous times to prevent such behaviors. On one occasion, a school employee called the mobile crisis hotline because the child was "being dangerous and harmful, could potentially be harmful to himself." In February 2009, the child was dismissed from the program because the school was "unable to keep him safe, and maintain him educationally at school, within [the] classroom." The child's teacher testified that no other student had ever been similarly dismissed from the school.

In March 2009, the child was assessed by Deborah Kriss, a developmental behavioral pediatrician. Kriss testified that the child had a high level of hyperactivity that placed him in the 99th percentile for the severity of attention deficit hyperactive disorder cases. She prescribed a low dosage of a medication that would treat this disorder and would also help diagnose other

potential mental illnesses, such as bipolar disorder, from which she suspected the child also suffered. She spoke with respondent at length about the potential side effects of the medication and, although respondent initially seemed concerned about such side effects, by the end of their visit, Kriss believed that respondent would fill the prescription. To ease respondent's concerns, Kriss made a follow-up appointment for one week later and gave respondent her work, home and cellular telephone numbers in the event that the child had a negative reaction to the medication. Respondent did not show up for, or cancel, the follow-up appointment. However, she subsequently called Kriss to inform her that she would not give the child the medication. When Kriss inquired about the child's progress, respondent refused to answer.

Kriss testified that the failure to treat the child's mental health problems was unreasonable, as it could present safety issues for him. Kriss further testified that the potential side effects of the recommended medication were minimal and would last for less than four hours. Although the record contains no actual psychological evaluation of respondent, Kriss also expressed her concerns with respondent's mental health and its affect on the child, and a caseworker at the shelter where respondent lives testified that, when he conducted a family assessment in April 2009, respondent informed him that she suffered from posttraumatic stress disorder.

Several other witnesses also testified about respondent's failure to obtain proper care for the child. For example, a case manager for the shelter in which respondent and the child lived testified that respondent did not follow through with any aspect of the individual service plan for mental health services that he had created for her and the child. Julie McLean, the child's teacher at North Albany Academy, testified that respondent attended a meeting with the committee on special education to establish a program for the child, but that a subsequent meeting was necessitated due to respondent's unwillingness to waive the presence of a parent advocate. Respondent failed to attend the rescheduled meeting or any of the four follow-up meetings or to explain her absence. The caseworker employed by petitioner who was assigned to respondent and the child testified that, when she inquired about respondent's absence at one of the meetings, respondent simply said, "No comment." A social worker at North Albany Academy also testified that, despite her discussions with respondent regarding the need for a psychiatric evaluation of the child to determine what treatment would be helpful while in the program, respondent never arranged for

such evaluation to be performed. Similarly, McLean testified that multiple attempts were made to encourage respondent to seek outside help for the child, to no avail.

It is well settled that the failure to provide medical treatment can constitute neglect (*see* Family Ct Act § 1012 [f] [i] [A]; *Matter of Dustin P.*, 57 AD3d 1480, 1481 [2008]; *Matter of LeVonn G.*, 20 AD3d 530, 530-531 [2005]). Here, respondent's primary contention on appeal is that her decision as a parent to refrain from obtaining treatment for the child was reasonable, as petitioner failed to demonstrate that she was aware of any benefits that the recommended medication or counseling would have on the child and there were potential side effects from the medication. We disagree. While a parent may reasonably have concerns about the effects of a medication on his or her child (*see Matter of Terrence P.*, 38 AD3d 254, 256-257 [2007]; *Matter of William AA.*, 24 AD3d 1125, 1126-1127 [2005], *lv denied* 6 NY3d 711 [2006]), the evidence here demonstrated respondent's refusal to act on *any* suggestions regarding treatment for the child. Moreover, respondent's refusal to administer the recommended medication—or to present evidence of a sought-after second opinion—was unreasonable given that any potential side effects of the medicine would be minor and short-lived. Additionally, the evidence indicated that, without treatment, the child's condition would adversely affect his ability to learn and could result in physical harm to himself and/or others. Notably, because respondent did not testify at the fact-finding hearing, Family Court was entitled to "draw the strongest inferences against [her] permitted by the evidence" (*Matter of Jesse XX. [Marilyn ZZ.]*, 69 AD3d 1240, 1243 [2010]). Thus, we conclude that there is a sound and substantial basis in the record to support Family Court's finding of neglect (*see Matter of Mitchell WW. [Andrew WW.]*, 74 AD3d at 1413; *Matter of Chelsea M.*, 61 AD3d 1030, 1032 [2009]; *compare Matter of Austin D.*, 63 AD3d 1215, 1216-1217 [2009]).

Peters, J.P., Kavanagh, Garry and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.