■ In the Matter of COREY UU., Alleged to be the Child of a Mentally Ill Parent. FULTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; DONNA UU., Appellant. [924 NYS2d 214]—

Garry, J. Appeal from an order of the Family Court of Fulton County (Skoda, J.), entered August 25, 2010, which granted petitioner's application, in a proceeding pursuant to Social Ser-

vices Law § 384-b, to adjudicate respondent's child to be the child of a mentally ill parent, and terminated respondent's parental rights.

Respondent is the mother of a child (born in 1993) who was removed from her care and custody by petitioner in October 2008. In January 2009, respondent consented to a finding of neglect and, in November 2009, petitioner commenced this proceeding to terminate her parental rights based upon her mental illness. When respondent failed to appear for a scheduled hearing in May 2010, Family Court found her in default. Following a subsequent inquest at which respondent did not appear but was represented by counsel, the court terminated her parental rights based on its determination that she was unable to provide proper care for the child by reason of mental illness as defined in Social Services Law § 384-b (6) (a). Respondent appeals.[1]

Respondent contends that the proof was inadequate to terminate her parental rights. "Parental rights may be terminated if it is established by clear and convincing evidence that respondent is 'presently and for the foreseeable future unable, by reason of mental illness . . . to provide proper and adequate care for a child who has been in the care of an authorized agency for the period of one year immediately prior to the date on which the petition is filed in the court' " (*Matter of Evelyn B.*, 37 AD3d 991, 992 [2007], quoting Social Services Law §.384-b [4] [c]). The determination must be based on " 'testimony from appropriate medical witnesses particularizing how the parent's mental illness affects his or her present and future ability to care for the child' " (*Matter of Karen GG. [Marline HH.]*, 72 AD3d 1156, 1158 [2010], *lv denied* 14 NY3d 713 [2010], quoting *Matter of Robert XX.*, 290 AD2d 753, 754 [2002]; *accord Matter of Alexis X.*, 23 AD3d 945, 946 [2005], *lv denied* 6 NY3d 710 [2006]).

Here, a licensed psychologist who conducted a court-ordered psychological evaluation testified that she interviewed respondent, reviewed collateral source material from social service and

1. We note that respondent's appeal is not precluded by her failure to move to vacate the default order entered against her in Family Court (*see* CPLR 5511). Respondent's counsel appeared at the fact-finding hearing, explained respondent's absence, and objected to the finding of default. At the subsequent inquest, counsel again appeared and participated by cross-examining witnesses and making opening and closing arguments (*compare Matter of Naomi KK. v Natasha LL.*, 80 AD3d 834, 835 [2011], *lv denied* 16 NY3d 711 [2011]; *Matter of Carolyn Z.*, 53 AD3d 875, 876-877 [2008], *lv dismissed* 11 NY3d 807 [2008]; *Matter of Semonae YY.*, 239 AD2d 716, 716 [1997]).

mental health providers, and diagnosed her as suffering from schizophrenia, paranoid type. The psychologist testified that respondent had suffered from active psychotic symptoms, including delusions and hallucinations, for at least three years, and that her inability to sustain stable relationships and employment were secondary symptoms consistent with her diagnosis. Although the psychologist's diagnosis differed from those respondent had received from other mental health providers, she testified that the previous diagnoses were made under different circumstances and respondent's behaviors as described by the previous providers were consistent with the diagnosis of paranoid schizophrenia (see Matter of Karen GG. [Marline HH.], 72 AD3d at 1159).[2]

The psychologist testified that respondent's disorganized thought patterns prevented her from answering simple questions, making it impossible for her to provide the psychologist with complete family, medical, psychiatric and developmental histories. With regard to the ability to parent, the psychologist testified that respondent was focused on gratifying her own needs and was unable to engage in cause-and-effect reasoning, understand the needs of another individual, or plan to meet such needs. The psychologist opined that respondent posed a risk of violence to her child as well as a risk of neglect, and she was unable to keep herself safe and stable and could not provide for a child's physical needs, such as food, medical care and shelter, or for the developmental needs of a teenager. As for respondent's prognosis, the psychologist recommended antipsychotic medication and long-term counseling. However, she opined that it was unlikely that respondent would successfully complete such a regimen, given her history of failing to comply with treatment, and further, that it was uncertain whether she could ever become capable of parenting the child even with treatment. Without treatment, the psychologist opined that there was a high probability that respondent's mental illness would worsen and her functional capabilities would erode.

Petitioner's caseworker testified, among other things, that respondent had told him several times that she took her psychiatric medications only when she felt like doing so. He further described numerous occasions when respondent had failed to comply with petitioner's efforts to assist her and with the

---

**2.** The record indicates that, among other things, respondent has a history of traumatic brain injury, underwent psychiatric hospitalizations in 2007 and 2008, and was diagnosed at one time with adjustment disorder with mixed emotional features and intermittent explosive disorder and, at another time, with mood disorder and alcohol abuse.

requirements of various programs. He described respondent's difficult and sometimes aggressive behavior during supervised visits with the child, such as accusing the child of lying, blaming the child for his placement in foster care, and shouting at him, requiring some visits to be terminated early. Respondent presented no countervailing testimony.

Granting the proper deference to Family Court's factual findings and credibility determinations, we find clear and convincing evidence in this record that, because of respondent's mental illness, she is presently unable to provide proper care for the child, and will be unable to do so for the foreseeable future (see Matter of Niya X. [Martha Y.], 79 AD3d 1196, 1198 [2010], lv denied 16 NY3d 705 [2011]; Matter of Casey L. [Joseph L.], 68 AD3d 1497, 1498-1499 [2009]). Although respondent now contends that she should have been given a suspended judgment to allow additional time to obtain treatment for the new diagnosis of paranoid schizophrenia, no such request was made at the time of the hearing, and nothing in the record indicates that respondent wished to obtain such treatment. Finally, the child was residing in a preadoptive foster home at the time of the hearing, and expressed his desire to be adopted. "[T]he slight hope of improvement upon which respondent relies is patently insufficient to justify long-term foster care" (Matter of Naticia Q., 226 AD2d 755, 757 [1996] [internal quotation marks omitted]). Accordingly, respondent's parental rights were properly terminated.

Mercure, J.P., Spain, Kavanagh and Stein, JJ., concur. Ordered that the order is affirmed, without costs.