██ In the Matter of JOSEPHINE BB., a Child Alleged to be Neglected. ATTORNEY FOR THE CHILD, Respondent; ROSETTA BB., Appellant. (And Two Other Related Proceedings.) [981 NYS2d 212]—

Stein, J. Appeal from an order of the Family Court of Schenectady County (Powers, J.), entered July 3, 2012, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's child to be neglected.

Respondent (hereinafter the mother) and Joseph DD. (hereinafter the father) are the unmarried parents of Josephine BB. (born in 2008), who resided with the mother from her birth. In late 2010, the parties each filed a petition for sole custody and, in January 2011, Family Court (Taub, J.H.O.) issued a temporary order awarding them joint legal custody, with the mother retaining primary physical custody. At that time, there was an open investigation by the Schenectady County Department of Social Services as a result of a hotline report against the mother regarding allegations that she failed to adequately address the child's medical and dental needs. In February 2011, based on a report by the Department of Social Services (*see* Family Ct Act § 1034), Family Court modified the temporary custody order to award physical custody to the father, with supervised visitation to the mother.

Shortly thereafter, with Family Court's permission, petitioner—the attorney for the child—commenced this proceeding on the child's behalf (*see* Family Ct Act § 1032 [b]), alleging that the mother neglected the child by, among other things, failing to address the child's pronounced dental issues and a possible speech delay and by refusing to cooperate with the child's medical and nutritional professionals, resulting in the child being dangerously underweight. In an amended petition, it was further alleged that, among other things, the mother had severely limited the child's food intake under the pretext of food allergies, but had failed to seek treatment by an allergist, and that the mother suffered from psychological problems that caused her to refuse recommended medical interventions for the child.

After a prolonged fact-finding hearing, Family Court (Powers, J.) made a finding of neglect[1] based on the mother's failure to follow the recommendations of the child's medical providers, as a result of which the child was significantly underweight and at risk of failure to thrive. Upon the mother's appeal, we now affirm.

To establish neglect, a petitioner must demonstrate, by a preponderance of the evidence, that the child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired due to the failure of the parent or caretaker to exercise a minimum degree of care (*see* Family Ct Act §§ 1012 [f] [i]; 1046 [b] [i]; *Nicholson v Scoppetta*, 3 NY3d 357, 368 [2004]; *Matter of Lydia DD. [Khalil P.]*, 110 AD3d 1399, 1400 [2013]; *Matter of Izayah J. [Jose I.]*, 104 AD3d 1107, 1108 [2013]). In determining the minimum degree of care, courts must objectively evaluate parental behavior in terms of whether "a reasonable and prudent parent [would] have so acted, or failed to act, under the circumstances then and there existing" (*Nicholson v Scoppetta*, 3 NY3d at 370; *see Matter of Mary YY. [Albert YY.]*, 108 AD3d 803, 804 [2013], *lv denied* 21 NY3d 865 [2013]; *Matter of Clayton OO. [Nikki PP.]*, 101 AD3d 1411, 1411 [2012]; *Matter of Samuel DD. [Margaret DD.]*, 81 AD3d 1120, 1122 [2011]). On this basis, a failure to provide adequate medical care and/or follow through with necessary medical treatment constitutes neglect (*see* Family Ct Act § 1012 [f] [i] [A]; *Matter of Mary YY. [Albert YY.]*, 108 AD3d at 805; *Matter of Samuel DD. [Margaret DD.]*, 81 AD3d at 1124).

There is a sound and substantial basis in the record before us to support Family Court's determination that the mother's refusal to follow the recommendations of the child's treating pediatrician constituted neglect (*see Matter of Shay-Nah FF. [Theresa GG.]*, 106 AD3d 1398, 1401 [2013], *lv denied* 21 NY3d 863 [2013]; *Matter of Samuel DD. [Margaret DD.]*, 81 AD3d at 1124). John Petrillo, the child's pediatrician, testified that the child was seen by a physician in his office within a week of her birth, when her weight fell in the 25th percentile on the growth chart. The child was not seen again by that pediatric office until one year later, by which time the child had missed multiple routine checkups and required vaccinations. The child then weighed

---

**1.** The parties agreed that the custody petitions would be held in abeyance pending a fact-finding hearing on the neglect petition. Subsequent to the neglect finding, Family Court held a combined hearing on the custody petition and disposition of the neglect petition and ultimately awarded the father sole legal and physical custody of the child, with visitation to the mother. The mother has filed a separate appeal from that order.

only 15 pounds, 12.4 ounces, placing her significantly below normal growth and development levels. During that visit, Petrillo conveyed his concerns about the child's growth to the mother, who claimed that the child had allergies to various foods, including milk. The mother returned the child to Petrillo in January 2010 and, because the child remained below the growth chart, Petrillo recommended rechallenging her with milk protein. The mother continued to express concerns about potential food allergies—for which the child had not been tested or examined by an allergist—and to restrict the child's diet, without any direction by Petrillo to do so.[2]

The mother thereafter missed various scheduled appointments with Petrillo, who next saw the child eight months later in August 2010. At that time, the child had gained only approximately three pounds and remained well below the growth chart. At a December 2010 appointment, the child had only gained one additional pound, prompting Petrillo to refer the child to a nutritionist. Although Petrillo testified that the mother was generally cooperative with the nutritionist, the mother discontinued bringing the child to this nutritionist, allegedly because the mother distrusted her.

Petrillo next saw the child in January 2011, a month before the father was awarded temporary custody. At that time, the child weighed less than she had the previous month. Petrillo then referred the child to an allergist because she was not consuming enough calories to enable her to gain sufficient weight. Petrillo explained that his primary concern was failure to thrive which, if left untreated, could endanger the child's growth and development, including "brain development, neurological development and subsequent cognitive development."

The child's medical records indicate that, although the mother brought the child to an allergist in January 2011, she would not agree to the recommended testing procedures, which were ultimately performed when the child was placed in the father's custody. As a result of the child's low weight, as well as the fact that the mother had missed multiple appointments (a total of six between August 2010 and January 2011) and was not following through with medical recommendations, Petrillo was concerned about the child's welfare and planned on filing a

---

2. Notably, despite the mother's claimed concern about the child's allergies, she was observed giving the child food that contained ingredients to which the child was allegedly allergic. This conduct ultimately resulted in Family Court temporarily precluding the mother from feeding the child during visits.

report with the State Central Registry. However, when he next saw the child in March 2011, after she had been in the father's care for approximately one month, the child had gained three pounds and was on the growth chart for the first time since her birth.[3] In our view, the foregoing supports a finding that the mother failed to provide the child with proper nourishment and medical treatment, as a result of which the child's physical condition was in imminent danger of becoming impaired (see *Matter of Mary YY. [Albert YY.]*, 108 AD3d at 804).

Additionally, the evidence established that the mother had psychological issues that placed the child in imminent danger. "While evidence of mental illness, alone, does not support a finding of neglect, such evidence may be part of a neglect determination when the proof further demonstrates that a respondent's condition creates an imminent risk of physical, mental or emotional harm to a child" (*Matter of Anthony TT. [Philip TT.]*, 80 AD3d 901, 902 [2011], *lv denied* 17 NY3d 704 [2011] [internal quotation marks and citation omitted]; see *Matter of Henry W.*, 30 AD3d 695, 696 [2006]; *Matter of Jesse DD.*, 223 AD2d 929, 930-931 [1996], *lv denied* 88 NY2d 803 [1996]; *Matter of Madeline R.*, 214 AD2d 445, 446 [1995]). Here, David Horenstein, a clinical psychologist who evaluated the mother in connection with the hotline report, testified that the mother has, among other things, a very significant personality disorder that results in her "see[ing] herself [in] a very special almost grandiose manner . . . and everybody else is at fault, everybody else is wrong and everybody else is to blame."

In general, while the record reflects that the mother took some steps to address the child's medical issues, it is evident that the mother would only follow the recommendations of the medical professionals with whom she agreed. The mother's behavior with respect to the child's pediatrician, dentist,[4] nutritionist and allergist establishes her rejection of their

---

**3.** While the mother argues that the child's weight as reported by Petrillo conflicted with weights charted by other medical providers, inasmuch as Petrillo had been consistently monitoring the child and the other providers would have used different scales, the measurements noted herein are derived from Petrillo's records.

**4.** Although Family Court did not find neglect based upon the mother's failure to attend to the child's dental issues, the mother's conduct with regard thereto is consistent with her approach to the child's weight problem and with Horenstein's analysis. Notwithstanding the pronounced decay in the child's four upper teeth, she was not seen by a dentist until the father made an appointment in November 2010. The mother was generally distrustful of the dentist, rejected the treatment recommendation and refused to bring the child for a return appointment. Ultimately, the child required dental surgery to remove four upper front teeth and to place crowns on four rear teeth.

recommendations and reflects a generalized conception that only she knew what was best for the child, which was consistent with Horenstein's analysis. The mother's attitude and conduct resulted in the child being denied necessary medical treatment for her low weight and inadequate nutrition and placed her at risk of failing to thrive, with its attendant dangers. The fact that she had not yet suffered from the potential consequences of her conditions is not determinative (see Matter of Joseph RR. [Lynn TT.], 86 AD3d 723, 724 [2011]) because—according to Petrillo's testimony—the child was in imminent danger of those consequences absent appropriate intervention. Thus, viewing the evidence in its entirety and according proper deference to Family Court's credibility determinations (see Matter of Alisia M. [Sean M.], 110 AD3d 1186, 1187-1188 [2013]; Matter of Shay-Nah FF. [Theresa GG.], 106 AD3d at 1401; Matter of Stevie R. [Arvin R.], 97 AD3d 906, 907 [2012]), we find that petitioner proved by a preponderance of the evidence that the child's well-being was in imminent danger of becoming impaired as a result of the mother's failure to exercise a minimum degree of care (see Matter of Mary YY. [Albert YY.], 108 AD3d at 803; Matter of Izayah J. [Jose I.], 104 AD3d at 1109; Matter of Justin A. [Jesus A.], 94 AD3d 575, 575 [2012], lv denied 19 NY3d 807 [2012]), and we discern no basis upon which to disturb Family Court's finding of neglect.

Finally, we disagree with the mother's assertion that Family Court erred by denying her request for a hearing pursuant to Family Ct Act § 1028 after temporary custody was granted to the father. As relevant here, Family Ct Act § 1028 provides that, upon an application by a "parent or other person legally responsible for the care of a child temporarily removed under [Family Ct Act article 10, part 2] . . . for an order returning the child, the court shall hold a hearing to determine whether the child should be returned" (Family Ct Act § 1028 [a]). Here, at the time that physical custody was changed from the mother to the father, the neglect proceeding had not been commenced and the parties' competing custody petitions were the only petitions pending. Family Court denied the mother's request for a hearing because the child had been placed with the father in the context of the custody proceedings and had not been removed under Family Ct Act article 10. Under these circumstances, we agree with Family Court that no hearing was required. In any event, even if Family Ct Act article 10 were applicable, Family Court's ultimate finding of neglect—and our affirmance thereof—would render the mother's argument moot (see Matter of Karm'ny QQ. [Steven QQ.], 114 AD3d 1101 [2014] [decided herewith]; Matter of Mary YY. [Albert YY.], 98 AD3d 1198, 1198

[2012]), and the exception to the mootness doctrine would not apply (*see Matter of Kiearah P.*, 46 AD3d 958, 959 [2007]; *compare Matter of Lucinda R. [Tabitha L.]*, 85 AD3d 78, 83-84 [2011]).

To the extent not specifically addressed herein, the mother's remaining contentions have been reviewed and found to be lacking in merit.

Peters, P.J., McCarthy and Garry, JJ., concur. Ordered that the order is affirmed, without costs.