Matter of Dakota W. (Kimberly X.) (2020 NY Slip Op 08137)





Matter of Dakota W. (Kimberly X.)


2020 NY Slip Op 08137


Decided on December 31, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 31, 2020

529040

[*1]In the Matter of Dakota W. and Others, Alleged to be Abandoned Children. Broome County Department of Social Services, Respondent; Kimberly X. et al., Appellants.

Calendar Date: November 24, 2020

Before: Lynch, J.P., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Sandra M. Colatosti, Albany, for Kimberly X., appellant.
Lisa K. Miller, McGraw, for Chad W., appellant.
Broome County Department of Social Services, Binghamton (Christopher A. Curley of counsel), for respondent.
Tracy A. Donovan Laughlin, Cherry Valley, attorney for the children.



Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Broome County (Connerton, J.), entered March 28, 2019, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be abandoned, and terminated respondents' parental rights.
In September 2018, petitioner commenced this proceeding alleging that respondent Kimberly X. (hereinafter the mother) and respondent Chad W. (hereinafter the father) abandoned their three children (born in 2015, 2016 and 2017) during the six-month period from March 20, 2018 through September 20, 2018, and seeking to terminate their parental rights.[FN1] Each child was placed in foster care within days of their respective births. A fact-finding hearing was held on February 7, 2019 and was continued on February 11, 2019. The mother and the father failed to appear on either date, and the hearing proceeded with petitioner presenting proof. Family Court found that petitioner established by clear and convincing evidence that the children were abandoned and terminated their parental rights. As a result, Family Court ordered that their guardianship and custody rights be transferred to petitioner. The mother and the father appeal.[FN2]
The mother contends that her right to due process was violated because she was denied an opportunity to participate in the fact-finding hearing in a meaningful way. "The Due Process Clauses of both the US and NY Constitutions protect a parent's right to be present throughout a proceeding implicating the termination of parental rights" (Matter of Eileen R. [Carmine S.], 79 AD3d 1482, 1482-1483 [2010]; see US Const, 5th Amend; NY Const, art I, § 6; Matter of Colby II. [Sheba II.], 145 AD3d 1271, 1273 [2016]). "This right to be present, however, is not absolute and must be balanced with the child[ren]'s right to a prompt and permanent adjudication" (Matter of Eileen R. [Carmine S.], 79 AD3d at 1483 [citation omitted]; see Matter of Chloe N. [Joshua N.], 143 AD3d 1114, 1116 [2016]).
The mother was assigned counsel to represent her during this proceeding. The mother appeared for a conference on January 24, 2019 and received notice of the hearing scheduled for February 7, 2019. The mother did not appear for the hearing. It was presumed that the mother was caring for the father, who allegedly had a grand mal seizure that morning. However, the mother did not contact Family Court nor her attorney to request an adjournment or to appear by telephone. Regarding the February 11, 2019 hearing, the mother's attorney stated that she contacted the mother and left her a message as to the date of the hearing, but the mother never contacted her. Additionally, the mother did not contact Family Court to request an adjournment; instead, she failed to appear for the hearing without explanation. The record shows that the mother voluntarily absented herself from the proceedings and did not request an adjournment, and her attorney adequately represented [*2]her in her absence by cross-examining petitioner's witnesses, making timely and valid objections and presenting a well-prepared closing argument. More importantly, the children have been in foster care their entire lives. The attorney for the children advocated for petitioner to move for a default judgment or for the court to proceed without the parents as "[t]his has been going on long enough." Under these circumstances, when balancing the mother's interests and the interests of the children, Family Court did not deprive the mother of her due process rights to be present and to participate in the hearing (see Matter of Jacqueline E.S.B. [Daniel B.], 160 AD3d 828, 829 [2018]; Matter of Elizabeth T., 3 AD3d 751, 753 [2004]).
Likewise, the father asserts that he was denied due process because his attorney failed to request an adjournment. The father was assigned counsel to represent him in the proceeding and received notice of the February 7, 2019 hearing at the January 24, 2019 conference. At approximately 8:35 a.m. on the morning of the hearing, the father called his attorney to advise her that he was having a grand mal seizure and, therefore, he would not be present in court. His attorney advised him that if he wished to seek an adjournment, he would have to contact Family Court. The father never contacted the court. However, it was alleged that approximately a half hour later, the father appeared at petitioner's office to drop off receipts, thus making his explanation for his absence suspect. In any event, in deciding to proceed with the hearing, Family Court stated that it would allow the father to move to vacate the resulting order and schedule a rehearing. The father did not avail himself of this remedy. As for the February 11, 2019 hearing, the father's attorney advised the court that she spoke to the father after the February 7, 2019 hearing to advise him of the next hearing date. The father did not seek an adjournment of this date through his attorney, nor did he contact Family Court. Instead, the father failed to appear. Despite the father's absence, his attorney cross-examined petitioner's witnesses, made timely and valid objections, and presented a zealous closing statement on his behalf. As with the mother, under these circumstances, when balancing the father's interests and the interests of the children, Family Court did not deprive the father of his due process rights to be present and to participate in the hearing (see id.).
The father's contention that his due process rights were violated because his attorney did not present evidence regarding issues such as the location of and access to parenting sessions is meritless. These issues were briefly discussed at the January 24, 2019 conference, during which Family Court indicated that it would consider such change after hearing the father's testimony at the upcoming hearing. As the father was not present, and thus did not testify at the hearing, the location of the [*3]visitation went unchanged.
Turning to Family Court's substantive finding, "[a] finding of abandonment is warranted when it is established by clear and convincing evidence that the parent[s] failed to visit or communicate with the child[ren] or the petitioning agency during the six-month period immediately prior to the filing of the abandonment petition, although able to do so and not prevented or discouraged from doing so by petitioner" (Matter of Colby II. [Sheba II.], 145 AD3d at 1272 [internal quotation marks and citations omitted]). "A parent's ability to visit and/or communicate with his or her child[ren] is presumed, and once a failure to do so is established, the burden is upon the parent to prove an inability to maintain contact or that he or she was prevented or discouraged from doing so by the petitioning agency" (Matter of Max HH. [Kara FF.], 170 AD3d 1456, 1459 [2019] [internal quotation marks and citations omitted]; see Matter of Joshua M. [Brittany N.], 167 AD3d 1268, 1269 [2018]). "A trier of fact may draw the strongest inference that the opposing evidence permits against a witness who fails to testify" (Matter of Nassau County Dept. of Social Servs. v Denise J., 87 NY2d 73, 79 [1995]; see Matter of Samuel DD. [Margaret DD.], 81 AD3d 1120, 1124 [2011]).
Petitioner called three foster parents who each testified that the children remained in their care the entire six-month period. Their addresses and telephone numbers did not change throughout the six-month period, and the mother and the father did not contact them via telephone or text message, card, gift or any other means during this time. The foster parents further testified that they did not impede, discourage or dissuade the mother or the father from communicating with them.
A social worker testified that his role was to schedule parenting time, doctor's appointments and services for the children. The mother and the father were asked to confirm and arrive on time for each parenting session. During the six-month period, 26 sessions of parenting time were scheduled, but neither the mother nor the father attended any session. The social worker testified that he would call the mother and the father to cancel the parenting session if they did not confirm. He testified that there was one occasion when they confirmed their parenting time, but they arrived 16 minutes late and the session was canceled.[FN3] The social worker testified that on one occasion the mother called seeking to change the location of the parenting time. The social worker explained that this could not occur as security was not available.[FN4] He testified that the mother and the father did not attend the children's doctor appointments or other services. The social worker testified that other than the noted communications, the mother and the father did not communicate with him as to the health, welfare and status of the children.
Petitioner's caseworker testified that she managed the permanency case with [*4]the goal to either return the children to the mother and the father or free them for adoption. Additionally, she was responsible for doling out bus passes to the mother and the father. She testified that she was present for the one parenting session, which was eventually canceled. The caseworker testified that the mother and the father were unruly, rude and loud. When she advised them that the session was canceled, the mother lunged at her and threatened to punch her in the face. The caseworker testified that the mother and the father did not appear for any parenting session not confirmed. She testified that both parents received 31-day bus passes in order to complete their court-ordered services, and the monthly bus passes did not change and were given to them whenever the mother or the father sought them. The mother and the father were required to pick up the bus passes and sign a form stating that they were using them to obtain required services. The caseworker testified that her communications with the mother and the father were limited to bus passes and the father's income; they did not pertain to arranging parenting sessions or the health, status and welfare of the children. Both the social worker and the caseworker testified that they did not impede, dissuade or discourage the mother and the father from communicating with them.
The requirements to confirm the parenting sessions by telephone and to hold the sessions at petitioner's office were reasonable preconditions given the mother's and the father's on-going failure to appear for scheduled sessions and their anger issues (see Matter of Joshua M. [Brittany N.], 167 AD3d at 1270; Matter of Carter A. [Jason A.], 111 AD3d 1181, 1183 [2013], lv denied 22 NY3d 862 [2014]). Likewise, the requirement to pick up and sign a statement that the bus passes were to be utilized to obtain services was reasonable. Their explanation that they were hesitant to visit because to do so would expose them to cold weather, which could possibly cause the father to suffer a seizure, is meritless given that virtually all of the parenting sessions occurred in the spring and summer. The evidence establishes that the mother and the father did not visit or communicate with their children during the requisite six-month period. The one occasion where the parents appeared late for a session is insufficient to defeat petitioner's showing of abandonment (see Matter of Dimitris J. [Sarah J.], 141 AD3d 768, 770-771 [2016]; Matter of Jazmyne OO. [Maurice OO.], 111 AD3d 1085, 1087 [2013]). Accordingly, there is no basis upon which to disturb Family Court's determination to terminate respondents' parental rights to the children on the ground of abandonment (see Matter of Damien D. [Ronald D.], 176 AD3d 1411, 1413 [2019]; Matter of Max HH. [Kara FF.], 170 AD3d at 1460).
Lynch, J.P., Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Although the mother and the father assert that the father is the biological father of all three children, the mother was married to another man when the youngest child was born. The father was never adjudicated to be the biological father of the youngest child, because he refused to sign an acknowledgment and the mother refused to cooperate with petitioner to establish paternity. The youngest child's legal father is alleged to be deceased. Thus, Family Court dismissed the petition against the father as to the youngest child, leaving only the mother as the subject of any allegations with respect to this child.

Footnote 2: This appeal is not precluded by CPLR 5511. Based upon Family Court's decision to proceed with the fact-finding hearing, coupled with the mother's and the father's counsel participating throughout the hearing, including cross-examining witnesses and making closing arguments, we find that the order was not entered on default and that, therefore, the mother and the father may appeal from the order (see Matter of Amanda I. v Michael I., 185 AD3d 1252, 1254 [2020]; Matter of Corey UU. [Donna UU.], 85 AD3d 1255, 1258 n [2011], lv denied 17 NY3d 708 [2011]).

Footnote 3: Because the mother and the father failed to attend parenting sessions early on, a session would be canceled if the parent was 15 minutes late.

Footnote 4: Both the mother and the father allegedly had anger issues and were ordered to attend anger management counseling.