■ In the Matter the Guardianship of DANIEL AARON D., an Infant. LOUISE WISE SERVICES, as Guardian and Custodian of DANIEL A. D., Respondent; PHOEBE D., Appellant.—Order, Family Court, New York County, entered December 20, 1976, granting petition for guardianship of the person and custody of a minor for the purpose of adoption, affirmed, without costs. Respondent, natural mother of Daniel Aaron D., appeals from an order of the Family Court granting the petition of Louise Wise Services for guardianship of the person and custody of the child, for the purpose of adoption. Following a fact-finding hearing, the court found that respondent, Phoebe D. "has been and is afflicted with a mental disease * * * to such extent that, if

Daniel were placed in or returned to her custody, his physical, mental and emotional well being would be endangered," that the disease was "schizophrenia, chronic undifferentiated type," and that by reason of her mental condition Phoebe D. would be "unable in the foreseeable future to provide proper and adequate care for Daniel." The court further found that Daniel "has acquired a stable home with, and is attached to his boarding parents, who desire to make their relationship with Daniel permanent through adoption, and Daniel's needs, welfare and interests are served best by adoption." The controlling statutory section is former subdivision 7 of section 384 of the Social Services Law which in pertinent part provides: "(a) If the parent, whose consent would otherwise be required under this section, be determined to be presently and for the foreseeable future unable to provide proper and adequate care, by reason of mental illness * * * for a * * * dependent child * * * the guardianship of the person and the custody of such child may, if the best interests of the child so require, be committed to an authorized agency". Subdivision (d) provided that such a finding would be made only upon clear and convincing evidence. Daniel Aaron D. was born in Brooklyn Hospital on December 25, 1971. While still in the hospital, and on respondent's written authorization, he was placed with the Commissioner of Social Services of the City of New York who transferred physical custody of him to the Louise Wise Services. On January 4, 1972, when the child was 10 days old, he was placed with his foster parents with whom he has since lived continuously. It is not disputed that the home is a stable one and that Daniel Aaron D., now seven years old, is attached to his foster parents whom he views as his mother and father. The proceedings were commenced by a petition filed in August, 1974, which alleged, *inter alia,* that since September, 1968, respondent has been repeatedly certified by psychiatrists on the staff of the Department of Social Services as being disabled because of mental illness, that at all times since September, 1968, she has received and is receiving public assistance as a mentally disabled person, and that in 1973, she was hospitalized at Kings County Hospital because of her mental illness. The principal witness relied upon by petitioner at the fact-finding hearing was Dr. Norman Weiss, a qualified psychiatrist who had been designated by the court to examine respondent. Following that examination, Dr. Weiss filed a written report in which he stated his diagnostic impression as "chronic schizophrenia; schizo-affective type", and presented in some detail the basis for that conclusion. At the hearing he reaffirmed that conclusion and testified that in his opinion respondent lacked the capacity because of mental illness to provide proper and adequate care for Daniel Aaron D. and that it was "highly doubtful" that she would have the capacity in the foreseeable future to provide such care in a consistent way. His professional reluctance to predict the future in absolute terms does not in our view impair the significance of his testimony. Dr. Irwin Brachman, respondent's personal psychiatrist, testified to the contrary that she suffered from an "affective disorder" and not schizophrenia. This conflicting testimony presented a factual issue which the hearing Judge was entitled to resolve as he did. We note that Dr. Weiss' opinion was impressively supported by respondent's well-documented history of mental illness lasting over a period of a number of years. A detailed summary of that history would serve no appropriate purpose. We note, however, that from a point in time preceding the birth of the child and continuing through the hearing in the Family Court, respondent was receiving financial assistance from the Department of Social Services as a mentally disabled person, a circumstance for which no satisfactory explanation appears either in her

testimony or that of the witnesses called in her behalf. Nor do we think it reasonable to minimize the significance of her hospitalization in Kings County Hospital commencing September 18, 1973, which followed aberrational behavior not necessary to describe here. The hospital record details statements and conduct which were described as "grossly delusional" and as responsive to "auditory and visual hallucination." The diagnosis then given was one of "schizophrenia, schizo-affective type, excited." As to this event, Dr. Brachman commented without amplification that "she may have had a schizophrenic episode." Given the persuasive nature of Dr. Weiss' testimony, and the confirmatory history of mental disease of long duration, we do not attach significance to the circumstance that Dr. Weiss' examination had occurred some months prior to the hearing. It is true that Dr. Brachman stated that respondent had shown recent improvement. The force of this judgment in terms of the date of the Weiss examination is much reduced by the fact that Dr. Brachman was of the view that at all relevant times, including the date of the Weiss examination and the hospitalization, respondent had not in fact been schizophrenic. In short, we see no basis to disturb the trial court's factual findings. As noted above, another precondition for the issuance of the order appealed from is a finding that "the best interests of the child so require." No challenge to the sufficiency of the evidence to support that finding has been presented on this appeal, nor indeed could such a challenge reasonably be made. We fail to see any violation of the respondent's rights in the circumstances which led to her absence from the courtroom when Dr. Weiss testified. As disclosed by the record, Dr. Weiss had expressed a professional concern that it would be harmful to respondent to hear his testimony. Even before the application was made to the court, and the court gave its direction, respondent's attorney had expressed his agreement, which he reaffirmed on the record. We see no reason to doubt that respondent's attorney who discharged his duties throughout the hearings with high professional competence and fidelity to his client, was fully authorized to act for respondent. For the reasons indicated above, the order appealed from is affirmed. Concur—Silverman, Markewich and Sandler, JJ.

Murphy, P. J., and Fein, J., dissent in a memorandum by Fein, J., as follows: Respondent, Phoebe D., appeals from an order of the Family Court granting the application by Louise Wise Services for guardianship of the person and custody of Daniel under former subdivision 7 of section 384 of the Social Services Law. The petition sought a judicial determination authorizing the placement of the child for adoption without the necessity of procuring the consent of Phoebe, the natural mother. Such procedure is authorized under former section 384 (subd 7, par [a]) of the Social Services Law: "If the parent, whose consent would otherwise be required under this section, be determined to be presently and for the foreseeable future unable to provide proper and adequate care, by reason of mental illness or mental retardation, for a destitute or dependent child who has been in the care of an authorized agency for not less than one year immediately prior to the institution of a proceeding pursuant to this subdivision seven, the guardianship of the person and custody of such child may, if the best interests of the child so require, be committed to an authorized agency by order of the family court". Section 384 (subd 7, par [d]) requires that a finding of mental illness or mental retardation be made "only upon clear and convincing proof." Daniel was born on December 25, 1971. On January 4, 1972, Phoebe authorized his placement with the Commissioner of Social Services, who transferred custody of Daniel to petitioner Louise Wise Services for foster care. In August, 1974, when Daniel was two years and eight months of age,

petitioner brought this proceeding in the Family Court for a determination that the natural mother, by reason of mental disorder, was unable presently and for the foreseeable future to provide adequate and proper care for the child. The application sought an order awarding guardianship of the person and custody of the child for purpose of adoption. A hearing on the application was held on October 21 and 22, 1976. Following the hearing, the court made purported findings and conclusions. An order of disposition was entered December 16, 1976, which placed guardianship of the person and custody of Daniel with Louise Wise Services. At the hearing there was an essential conflict between the testimony of the court-appointed psychiatrist, Dr. Weiss, and that of Dr. Brachman, the psychiatrist who appeared on behalf of the natural mother. Dr. Weiss had been appointed by order of the court to examine the mother and to submit a written opinion. Although the doctor found the mother to be suffering from schizophrenia, chronic undifferentiated type, and thus unable to provide proper and adequate care for Daniel, the record is far from sufficient to satisfy the statutory burden requiring clear and convincing proof. Dr. Brachman, who had been treating the mother for three years, since August 29, 1973, was of the opinion that she was not a chronic schizophrenic affective type. He found her to be a sensitive woman who was under emotional stress in fighting to regain her child, with a positive attitude toward life and toward her work. He concluded that it would be good for her to have her son with her. Dr. Brachman opined that there was a possibility in the future that Phoebe could be a competent and valuable mother and that she could take care of her son. He was also of the opinion that the fact that she had not had her child with her had a detrimental effect upon her in the past. He found a marked improvement in her condition during the 10-month period subsequent to the January, 1976 examination by Dr. Weiss. It is useful to contrast this testimony with the testimony of the court-appointed psychiatrist, Dr. Weiss, who had not treated the mother for a continuous period and last examined her 10 months prior to the hearing on January 15, 1976. Although Dr. Weiss stated that it was impossible to set forth the etiology of the mother's condition or illness, he did respond to the three remaining questions certified by the court in the order appointing him to examine the mother, as follows: "Q. The second question was, 'does Phoebe * * * have the capacity, presently, to provide proper and adequate care for Daniel * * * her son'? A. It was my opinion at the time of my examination, that she did not. Q. The third question is, 'will Phoebe * * * have the capacity in the foreseeable future to provide adequate and proper care for Daniel?' A. My opinion, at that time, was that it was highly doubtful that that could be counted on in a consistent way. Q. And the fourth question is, 'would restoring physical custody of Daniel * * * to Phoebe * * * endanger said child's physical, mental or emotional wellbeing?' A. I consider that highly likely." Somewhat contradictory, however, is the testimony by Dr. Weiss upon cross-examination by counsel for the mother: "Q. * * * Now in view of the fact that that examination was over ten months ago, Doctor, isn't it possible if you had an examination at this time that your answer might be to the contrary? A. Well, that depends on the definition of presently. Q. Well presently. When you say presently A. If it means today, the answer could be that she is fine today. * * * Q. Now on the next question. 'Will Phoebe * * * have the capacity in the foreseeable future to provide adequate and proper care for Daniel * * *'? When you answered Mr. Neff and the way you phrased it and the word that you actually used was 'I am doubtful that she would have capacity in the foreseeable future to provide adequate and proper care'. Now

if you are doubtful then, doesn't this mean that you can't give any sort of an accurate answer to that question? A. Well, it means that I would be grandiose to say definitely yes or definitely no. You would have to be trying to act like a magician in order to come across with that type of statement. I am now presenting an opinion or a likelihood. Q. Yes. Isn't it also your opinion, Doctor, that it would be perfectly possible that she could provide adequate and proper care for Daniel? A. Possible but highly doubtful. Q. So that there is that possibility, isn't there, Doctor. A. Yes." In contrast, Dr. Brachman responded in the affirmative to inquiries as to whether Phoebe had the present capacity and whether she had the capacity in the foreseeable future to provide proper and adequate care for her son and could be a "valuable mother to her child." As to the possible effect upon the child of restoring custody to the mother, he testified: "Q. And the last question is, 'would restoring physical custody of Daniel * * * to Phoebe * * * endanger said child's physical, mental or emotional wellbeing?' A. It might very well endanger the child's physical, mental and emotional makeup because as in any trauma to a child would also under any circumstances, but there are also other traumas perhaps—perhaps I am not answering your question in a direct way and such as the trauma of the child finding out that he is an adopted child. Such is the trauma that children have in search of their biological parents. There is no doubt in my mind that this will be a trauma to the child, but it is not an irreversible trauma. Q. Doctor, isn't it a fact that the trauma that you are now referring to would be the trauma in any case where a child is taken away from the parents and who are temporarily taking care of the child and turned over to the original parent? A. Yes, sir. Q. So aside from that, do you see any sort of danger? A. Aside from that, no." The record plainly demonstrates a sharp difference in the psychiatric testimony as to the present condition and future capacity of appellant to care for and assume custody over her child. Although the credibility of the witnesses who appeared at the hearing was clearly a matter for the trial court, the burden imposed upon the agency to establish the mother's mental illness by clear and convincing proof must be respected. Appropriate consideration must be given to the somewhat equivocal nature of the testimony of Dr. Weiss, who was less than positive in his opinion as to the present capacity of the mother, as well as to her ability in the foreseeable future to provide adequate and proper care for the child. Moreover, Dr. Weiss last examined the mother 10 months prior to the hearing and could not render with assurance any positive opinion as to her present condition. However, Dr. Brachman, who had been treating the mother for three years, testified as to a marked improvement in her condition during the period subsequent to the examination of Dr. Weiss. Under the circumstances, before finally disposing of so significant an issue, the court should have directed a further psychiatric examination of the mother. Such a current examination would enable the court to weigh properly the competing opinions of the two psychiatrists in the face of the statutory burden imposed on the agency. The majority, by affirming the order appealed from, in effect has determined that the interests of the child may be adversely affected by a remand for a new hearing. This is inappropriate in view of the failure to meet the burden of proof which the statute contemplates and the clear need for further proof. The child, who is now 6 years and 10 months of age, will continue to remain with the foster parents pending further proceedings and will not be adversely affected by the holding of such a hearing. Overlooked by the majority is the parental right of the natural mother, plainly a legitimate interest to consider. Before such parental rights may be judicially abrogated,

the statute, as applicable here, requires that a hearing be held and that a finding of mental illness be made upon clear and convincing proof. The proof in this case is insufficient to satisfy the statutory standard. Under the circumstances, the more prudent approach would have been for the Family Court Judge to direct a further psychiatric examination. Moreover, the exclusion of the mother from the courtroom during the testimony by the court-appointed psychiatrist was improper. Such exclusion is sufficient in and of itself to require reversal and remand for a new hearing. When Dr. Weiss took the stand, petitioner's attorney conveyed to the court Dr. Weiss' request that the mother not be in the courtroom during his testimony. The court then inquired of the doctor whether he felt it would be injurious to have her present and he responded in the affirmative. Following this inquiry, the transcript records the following statement by the Family Court Judge: "All right. Based on that recommendation, we will". The court's statement was interrupted by the mother's attorney who stated, "I have no objection." The court, continuing, stated, "We will have to exclude her for that purpose." The absolute and unqualified right of a party to be present at all stages of a trial and to be present in the courtroom during trial is well established. (Carlisle v County of Nassau, 64 AD2d 15; Ajaeb v Ajaeb, 276 App Div 1094, affd 301 NY 605; Leed v Robert Joshua, Ltd., 72 NYS2d 3; Shepherd v Swatling, 36 Misc 2d 881; Richardson, Evidence [10th ed], § 461.) Section 6 of article I of the New York State Constitution provides: "In any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions and shall be informed of the nature and cause of the accusation and be confronted with the witnesses against him." This constitutional principle was held even to include the right of a party to be present during voir dire examination of a jury panel in a civil action in Carlisle v County of Nassau (supra, p 19) where the court stated: "The suggestion of defendant that a party somehow forfeits his constitutional right to be present at any and all stages of the trial when represented by counsel has no basis either in law or in logic. Waiver of the right to be present at a particular stage of the trial must be strictly construed * * * The attorney is not the alter ego of his client, but his representative or agent. As such he may not supplant the client either at his or the court's unbridled pleasure." As applied to this case, the majority concludes that counsel's statement that he had no objection to the exclusion of his client from the courtroom effected a waiver of the constitutional right. However, before a waiver may be found, it must be established that there was a knowing and intelligent relinquishment of a known right. (See Ajaeb v Ajaeb, 276 App Div 1094, affd 301 NY 605, supra.) Nowhere in the record does it appear that the court advised the mother that she had an absolute right to remain in the courtroom, despite the preference of the petitioner and the court-appointed psychiatrist that she not be present during his testimony. In the absence of such an instruction and inquiry, it cannot be concluded that the mother agreed to forego her right to be present. In addition, the transcript affirmatively demonstrates that the court had already decided to exclude the mother and was in the process of doing so, when interrupted by the attorney who interjected that he had no objection. Plainly, the testimony of Dr. Weiss was crucial. It was upon the testimony of this court-appointed psychiatrist that the court concluded that petitioner had established by "clear and convincing proof" that by reason of mental illness, the mother was presently and for the foreseeable future would be unable to provide proper and adequate care for her child. Without fully advising her of her rights, the court effectively precluded the mother

from hearing the very testimony upon which the court relied to terminate her rights. (See *Matter of Esther T.,* 86 Misc 2d 452.) Denial of her constitutional right to be present during the proceeding deprived her of her concomitant right to confront witnesses who might testify against her. Since the mother was not present during the testimony of Dr. Weiss, we have no way of knowing on this record whether she would have been in a position to refute or challenge his testimony or whether she could have aided counsel in that regard. The denial of her fundamental constitutional right to be present denied her due process. It requires at the least that the matter be remanded for a new hearing. Accordingly, the order, Family Court, New York County, entered December 20, 1976, granting the petition of Louise Wise Services for guardianship of the person and custody of Daniel Aaron D., a minor, for the purpose of adoption, should be reversed and the matter remanded for a new hearing after a current psychiatric examination to be directed by the Family Court.