■ In the Matter of SHANE PP., Alleged to be the Child of a Mentally Ill Parent. FRANKLIN COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; TODD PP., Appellant. [724 NYS2d 788] —Cardona, P. J. Appeal from an order of the Family Court of Franklin County (Ryan, J.), entered June 4, 1999, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be the child of a mentally ill parent, and terminated respondent's parental rights.

Shane PP. was born out of wedlock in March 1992. In July 1993, he was found to have been neglected by his mother and placed in petitioner's custody where he remains in foster care.* An order of filiation adjudicating respondent to be Shane's father was entered in December 1993.

In September 1994, respondent filed a petition pursuant to Family Court Act § 1062 to terminate Shane's placement. Family Court denied the petition without a hearing resulting in an appeal to this Court (*see*, *Matter of Shane OO.*, 228 AD2d 805). We reversed and remitted the matter for further proceedings (*id.*). In December 1997, respondent was adjudicated to have neglected Shane through excessive corporal punishment. Respondent did not take an appeal from that order. In March

---

* The mother surrendered Shane for adoption in May 1998.

1998, petitioner filed the instant petition pursuant to Social Services Law § 384-b (4) (c) to terminate respondent's parental rights based upon his mental illness. Following a hearing held in March and April 1999, Family Court granted the petition resulting in this appeal.

Initially, respondent contends that Family Court's determination to terminate his parental rights is not supported by clear and convincing proof (see, Social Services Law § 384-b [3] [g]) that he is "presently and for the foreseeable future unable, by reason of mental illness * * * to provide proper and adequate care" for his child (Social Services Law § 384-b [4] [c]). His argument is two-fold, namely, that petitioner failed to establish that he presently suffers from an acute mental illness and, also, that there is the possibility of future improvement.

With respect to his first contention, we note that "mental illness" is defined by statute as "an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child" (Social Services Law § 384-b [6] [a]; see, Matter of Dylan K., 269 AD2d 826, 827, lv denied 95 NY2d 766). In support of his argument that he suffers only from moderate disorders, respondent points to the February 16, 1996 evaluation of Nadine Case, prepared for petitioner, which found that despite his underlying pathology, he "[might] be able to perform and function in an adequate way" to care appropriately for his child. Notably, however, Case qualified this finding by observing that respondent's severity of disturbance could be underrepresented by his "extensively self-favorable responding" and "defensiveness" approaches to the testing that she performed and, therefore, "incompletely reflect various underlying aspects of his current emotional state." There was also evidence that respondent refused to sign a release of his North Star Mental Health records so that Case could have an historical reference in preparing her psychological evaluation.

Naveen Achar, a psychiatrist at North Star, performed a psychiatric assessment of respondent in October 1996 and diagnosed him with anxiety disorder not otherwise specified. He attempted to treat respondent in 1997 with various types of antianxiety, antidepressant and antipsychotic medication, however, respondent refused the medications. Respondent claimed that Valium, which Achar was unwilling to prescribe because of the dangers of dependence and addiction, was the only medication which offered some control of his symptoms.

Other evidence established that respondent, who is presently 35 years of age and unemployed, was diagnosed in March 1996 as suffering from, *inter alia*, schizoaffective disorder-provisional and anxiety disorder not otherwise specified, resulting in his continuing eligibility for Federal Supplemental Social Security benefits.

Richard Liotta, a court-appointed psychologist, evaluated respondent in February 1998. After observing respondent and reviewing extensive mental health treatment records, he found that respondent has a chronic mental illness characterized by a number of longstanding personality disorders described in the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders: DSM-IV (4th ed 1994). The disorders include anxiety disorder not otherwise specified causing him to experience a high level of anxiety and agitation resulting in his wanting medication to calm himself and control his feelings of internal distress, a nonspecific impulse control disorder resulting in inability or difficulty in controlling his impulses, particularly his anger, an aspect of antisocial behavior characterized by the inability to take responsibility for his own behavior, an aspect of paranoid disorder which tends to shade his interpretation of day-to-day events and interactions with a feeling that he is being persecuted in some way, and some characteristics of narcissistic personality disorder in that he feels entitled to special treatment and is somewhat self-centered in his perception of what is going on around him. We find the foregoing testimony and the accompanying records sufficient to establish the "totality" of respondent's mental illness by clear and convincing evidence (*see, Matter of Dylan K.*, 269 AD2d 826, 827, *supra*; *Matter of Melissa R.*, 209 AD2d 155, 156, *lv denied* 85 NY2d 803).

Turning to respondent's contention that his mental condition will improve in the future, we refer to Liotta's opinion that respondent's personality disorders are difficult to treat and change because people afflicted with such disorders do not perceive those aspects of themselves as problems. Liotta observed that medication would not likely control respondent's antisocial behaviors and the likelihood of success in treatment was fairly low. Achar noted that the medication therapy he attempted was not successful. Furthermore, evidence that respondent was seeing Theresa Knapp, a psychotherapist at North Star, revealed that those sessions were sporadic and crisis-based. She testified that she saw respondent a total of six times between June 1998 and April 1999, however, she acknowledged that he did not meet her expectation of biweekly

therapy sessions. While Knapp did not rule out the possibility for respondent to assume custody in the future, she acknowledged that he would require a minimum of two more years of preparatory counseling.

Rather than presenting a realistic possibility that respondent will be able to adequately care for his child in the foreseeable future, the testimony and documentary evidence reveal a biological parent who, for the better part of his adult life, has been unwilling or unable to recognize the extent of his mental illness, identify goals and work to resolve them by participating in meaningful treatment. His behavior over the years has been problematic. Various service providers testified to their inability to work with him on a long-term basis to accomplish the goals needed for reunification with his child due to his lack of cooperation, resistance to treatment and belligerent attitude. Left untreated, the evidence indicates that respondent's anxiety will cause him to have difficulty dealing with the stresses that are so common in raising children. Respondent's witness, Knapp, stated that she could not support respondent's request for full-time custody of his son. She noted that it would be difficult for him to parent at present and had concerns about his impulse control and the stability of his mood.

Furthermore, Liotta opined that respondent should not be Shane's primary caretaker. He testified that, considering respondent's impulse control problems when he becomes angry, the resulting verbal tirades could be extremely intimidating, fear invoking and damaging to the child. He further indicated that such conduct could not only cause psychological damage to the child, but also result in physical violence. In that regard, we note that bruises discovered on the child's buttocks in April 1997 following a second overnight visit with respondent resulted in the above-mentioned adjudication of neglect based upon his admission of excessive corporal punishment.

In our view, given respondent's lengthy history of unsuccessful compliance with meaningful treatment and the mere possibility of improvement in the future, long-term foster care cannot be reasonably justified (*see, Matter of Naticia Q.*, 226 AD2d 755, 757). In conclusion, we find that the record amply demonstrates, by clear and convincing evidence, that respondent is, and for the foreseeable future will remain, unable to care for his child by reason of his mental illness (*see,* Social Services Law § 384-b [3] [g]; [4] [c]; [6] [a]). Accordingly, we affirm Family Court's determination to terminate his parental rights.

We have considered respondent's remaining contentions and

find them to be either unpreserved for appellate review or lacking in merit.

Crew III, Peters, Spain and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.