■ In the Matter of JAZMYNE II. and Another, Alleged to be Children of a Mentally Ill Parent. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MEAGAN JJ., Appellant. [55 NYS3d 802]—

Lynch, J. Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered January 11, 2016, which granted petitioner's application, in a proceeding pursuant to Social Ser-

vices Law § 384-b, to adjudicate the subject children to be the children of a mentally ill parent, and terminated respondent's parental rights.

Respondent is the mother of two children (born in 2008 and 2012). On March 20, 2014, petitioner commenced a proceeding alleging, among other things, that respondent neglected the children. The petition was filed after respondent brought the children to a Walmart store located in Clinton County late in the evening. She was acting erratically, was hallucinating and left the children unattended in a shopping cart. The police were summoned, respondent was taken to the hospital and the children were placed in protective custody. At the hearing, respondent explained that she had low potassium and had taken three Benadryl tablets prior to taking the children to Walmart.[1] On March 21, 2014, Family Court granted petitioner's application for the temporary removal of the children and ordered respondent to, among other things, obtain substance abuse and mental health evaluations and follow all treatment recommendations.

Following a fact-finding hearing held in May 2014, Family Court determined that respondent's conduct constituted neglect of both children. In August 2015, petitioner commenced this proceeding to terminate respondent's parental rights to the children based on mental illness (see Social Services Law § 384-b [4] [c]). The court ordered respondent to undergo a mental health evaluation by Richard Liotta, a licensed clinical psychologist. Following a fact-finding hearing, Family Court terminated respondent's parental rights without a dispositional hearing. At the time of the fact-finding hearing, respondent was serving a jail sentence for violating a court order because she had a positive drug test. Respondent now appeals.

Social Services Law § 384-b defines mental illness as "an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child" (Social Services Law § 384-b [6] [a]). "In order to terminate parental rights due to the mental illness of a parent, it must be shown by clear and convincing proof that the parent is presently and for the foreseeable future unable, by reason of that mental illness[,] to provide proper and adequate care for the child" (*Matter of Angel SS. [Caroline SS.]*, 129 AD3d 1119, 1119-1120 [2015]

---

**1.** Respondent did not submit any medical evidence to support this explanation.

[internal quotation marks, brackets, ellipsis and citations omitted]). To meet its burden, petitioner must provide proof of the illness and present "testimony from appropriate medical witnesses particularizing how the parent's mental illness affects his or her present and future ability to care for the child" (*Matter of Logan Q. [Michael R.]*, 119 AD3d 1010, 1010-1011 [2014] [internal quotation marks and citation omitted]). On this appeal, respondent contends that petitioner failed to meet its burden of proof. For the following reasons, we disagree.

Petitioner presented the testimony of Liotta, a psychologist who was ordered by Family Court to evaluate respondent. Liotta testified that, among other things, he interviewed respondent, administered a psychological diagnostic test and reviewed collateral source information, including records generated during respondent's prior mental health treatment. Based on this evaluation, Liotta opined that respondent's primary diagnosis was borderline personality disorder. He also identified a number of secondary diagnoses, including opioid use disorder.[2] With respect to respondent's borderline personality disorder, which he characterized as "fairly severe," Liotta explained that this condition affected respondent's way of viewing the world and caused her to be impulsive, unpredictable, to blame others and to minimize and deny that she had any problems. Liotta further explained that respondent's illness caused her to tend to prioritize her own needs ahead of her children's needs and to have difficulty making appropriate choices.

With regard to how respondent's illness affected her ability to parent, Liotta explained that respondent's emotional volatility, poor judgment and lack of impulse control put the children in danger of neglectful behavior. To illustrate, Liotta cited respondent's history of relationships with drug dealers and incarcerated men and her abrupt decision to move with the children from Saratoga County to Clinton County. Notably, in Saratoga County, respondent was undergoing mental health treatment, had familial support and had a place to live, and the older child was enrolled in and attending school. Respondent's stated rationale for the move was to be closer to her husband, who was incarcerated in a prison in Clinton County. Prior to this relocation, respondent did not arrange for

---

2. Liotta characterized the opioid use disorder as "in remission in a controlled environment" because respondent had not used drugs while she was in jail. The remaining secondary diagnoses were other specified traumatic and stressor related disorder, unspecified bipolar and related disorder, other specified obsessive compulsive and related disorder and other specified dissociative disorder.

continued treatment or housing for herself or the children, nor did she enroll the older child in school. Liotta also cited respondent's extreme and physically invasive method of cleansing the children after they used the bathroom, her inability to take guidance from caseworkers with regard to this behavior and her generally oppositional response to petitioner's caseworkers. Liotta also cited an incident in November 2014 wherein respondent appeared at the emergency room, agitated and poorly focused, with her feet covered in lacerations, and giving an explanation that was not consistent with the injury.

To successfully treat her mental illness, Liotta explained that respondent would require psychotherapy and medication. He specifically characterized borderline personality disorder as "long[ ]standing and difficult[ ]to[ ]change." Unfortunately, however, based on respondent's treatment history and because her illness caused her to minimize and deny its existence, Liotta opined that respondent would not improve in the foreseeable future. Specifically, given the lack of "positive indicators," he believed that respondent was not likely to improve within two to four years. In support of this opinion, Liotta cited respondent's historical and continuing tendency to miss scheduled mental health treatment appointments and her failure to comply with treatment recommendations and Family Court's orders with regard to drug use.[3]

Initially, we reject respondent's argument that Family Court improperly based its determination on hearsay evidence. Liotta testified without contradiction that the materials he reviewed enabled him to formulate an opinion and were typically and reasonably relied upon by professionals for this purpose. As such, Liotta's testimony was admissible under the professional reliability exception to the hearsay rule (see *Matter of Angel SS. [Caroline SS.]*, 129 AD3d at 1120; *Matter of Kaitlyn X. [Arthur X.]*, 122 AD3d 1170 [2014]). Also without merit is respondent's claim that petitioner failed to provide appropriate services and that the court should have issued a suspended judgment to allow her to obtain proper treatment. As Liotta explained, it was challenging to diagnose and treat respondent because she tended to minimize, rationalize and deny her symptoms. In our view, this factor, and not petitioner's lack of diligent efforts, frustrated petitioner's efforts to provide appropriate treatment. Moreover, "the mere possibility that respondent's condition, with proper treatment, could improve in the future is insuf-

---

**3.** During the pendency of this proceeding, respondent tested positive for drugs three times and failed to attend a number of mandated, randomly scheduled drug tests.

ficient to vitiate Family Court's conclusion" (*Matter of Burton C. [Marcy C.]*, 91 AD3d 1038, 1041 [2012] [internal quotation marks, brackets and citations omitted]). As such, in the absence of any contrary evidence, and giving the requisite deference to Family Court's credibility assessments, we find that Family Court's determination was supported by clear and convincing evidence (*see Matter of Angel SS. [Caroline SS.]*, 129 AD3d at 1121).

Finally, respondent's argument that Family Court should have conducted a dispositional hearing was not preserved for our review. If we were to reach this issue, we are mindful that a dispositional hearing is not always required in a proceeding seeking the termination of parental rights (*see Matter of Joyce T.*, 65 NY2d 39, 46 [1985]; *Matter of Burton C. [Marcy C.]*, 91 AD3d at 1041) and, under the circumstances presented, we would discern no error.

McCarthy, J.P., Egan Jr., Devine and Clark, JJ., concur. Ordered that the order is affirmed, without costs.