■ In the Matter of DUANE II., Alleged to be the Child of a Mentally Ill Parent. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ANDREW II., Appellant. (Proceeding No. 1.) In the Matter of JUSTYCE HH., Alleged to be the Child of a Mentally Ill Parent. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ANDREW II., Appellant. (Proceeding No. 2.) [56 NYS3d 360]—

Lynch, J. Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered November 20, 2015, which granted petitioner's applications, in two proceedings pursuant

to Social Services Law § 384-b, to adjudicate the subject children to be the children of a mentally ill parent, and terminated respondent's parental rights.

Respondent is the father of two children (born in 2009 and 2014). In October 2013, respondent was arrested for attempted criminal possession of a controlled substance in the third degree with intent to sell. At the time of the arrest, the older child was present with respondent in their home. Petitioner temporarily removed the older child and filed a neglect petition against respondent. Petitioner assumed custody of the younger child shortly after his birth because his mother was incarcerated. At the time, respondent had not yet been adjudicated to be that child's father. In February 2015, petitioner filed a neglect petition against the father concerning the younger child.

In May 2015, petitioner commenced a proceeding to terminate respondent's parental rights with respect to the younger child. In June 2015, petitioner sought similar relief with regard to the older child. In both petitions, petitioner alleged that respondent was mentally ill and that his mental illness prevented him from adequately caring for the children presently and for the foreseeable future. Respondent consented to a mental health evaluation, and a fact-finding hearing was held in September 2015. At the conclusion of the hearing, Family Court granted petitioner's applications and terminated respondent's parental rights. At the hearing and on appeal, the attorneys for the children both vehemently argue in support of petitioner's position for termination of respondent's parental rights. Respondent now appeals.

"In order to terminate parental rights due to the mental illness of a parent, it must be shown by clear and convincing proof that the parent is presently and for the foreseeable future unable, by reason of that mental illness[,] to provide proper and adequate care for the child" (*Matter of Angel SS. [Caroline SS.]*, 129 AD3d 1119, 1119-1120 [2015] [internal quotation marks, brackets, ellipsis and citations omitted]; *see Matter of Summer SS. [Thomas SS.]*, 139 AD3d 1118, 1119 [2016]). "In order to meet its burden, the petitioner is required not only to provide proof of the parent's underlying condition, but must also elicit testimony from appropriate medical witnesses particularizing how the parent's mental illness affects his or her present and future ability to care for the child" (*Matter of Logan Q. [Michael R.]*, 119 AD3d 1010, 1010-1011 [2014] [internal quotation marks and citations omitted]). The clear and convincing evidence standard means that petitioner must establish "that the evidence makes it highly probable that what

[it] claims" is accurate (Prince, Richardson on Evidence § 3-205 [11th ed]; *see* PJI 1:64; *Currie v McTague*, 83 AD3d 1184, 1185 [2011]). "Clear and convincing evidence is a higher, more demanding standard than the preponderance standard and it is evidence that is neither equivocal nor open to opposing presumptions" (*Matter of Darius B. [Theresa B.]*, 90 AD3d 1510, 1510 [2011] [internal quotation marks, ellipsis and citation omitted]). Family Court must strictly adhere to this standard (*see Matter of Arielle Y.*, 61 AD3d 1061, 1062 [2009]).

Here, petitioner presented the report and testimony of Richard Liotta, a psychologist who, among other things, reviewed petitioner's records and respondent's treatment records, interviewed respondent and administered psychological testing. The materials reviewed included records generated when respondent was a child and adolescent, when he was referred for a sexual abuse evaluation and treated for behavioral issues. Liotta also reviewed a lengthy autobiography that respondent wrote for the caseworker that petitioner had assigned to him. Notably, although respondent describes a difficult childhood in his autobiography, during his interview with Liotta, he denied that he was sexually abused and explains that his stepmother told him to make the false claims. The historical treatment records conclude that both he and his half sibling were sexually abused by their paternal relatives. In Liotta's view, respondent suffered a "significantly dysfunctional childhood and adolescence" and exhibited "behavioral and psychiatric problems in childhood and adolescence."

As a result of his evaluation, Liotta opined that respondent suffered multiple conditions, including mixed personality disorder with antisocial borderline and narcissistic features, unspecified depressive disorder, unspecified anxiety disorder, alcohol use disorder, cannabis use disorder, opioid use disorder and cocaine use disorder. Further, Liotta explained that respondent's primary mental illness diagnosis was the personality disorder and that his "psychiatric issues have substantially contributed to [respondent's] substance use," and his "substance use exacerbates his psychological issues." Liotta testified unequivocally that, due to his mental health issues, respondent was presently unable to care for the children. With regard to respondent's ability to care for the children for the foreseeable future, Liotta characterized his conclusion as "a close call" in light of "both positive and negative indicators." During his testimony, Liotta confirmed that he was "[s]omething less than a hundred percent sure" that respondent would be unable to provide adequate care for the foreseeable future. He later clari-

fied that he was 90% sure that it was unlikely that respondent would be able to provide adequate care for the foreseeable future—which Liotta defined as the next "two to three to four years."

In our view, Liotta's comprehensive report and testimony was sufficient to establish that respondent is presently, and for the foreseeable future will remain, unable to provide proper and adequate care for the two children due to his mental illness (see Social Services Law § 384-b [4] [c]; *Matter of Burton C. [Marcy C.]*, 91 AD3d 1038, 1040 [2012]). As Liotta explained, respondent's continuing lack of insight with regard to his mental illness, established during his interview and evident in the results of the psychological testing, was a concern and surprising in light of his treatment history, and that his "denial, compartmentalization, and rationalization interfere" with his capacity to gain insight in the future. Liotta attributed these characteristics to respondent's personality disorder and, after identifying and detailing the positive factors and "glimmers of hope" that suggested that respondent might be able to provide adequate care in the future, concluded that, based on respondent's history, he did not believe that treatment would be successful. Although respondent testified during the fact-finding hearing that he was amenable to seeking treatment, Liotta testified that he was not convinced that respondent was sincere. Further, "the mere possibility that respondent's condition, with proper treatment, could improve in the future is insufficient to vitiate Family Court's conclusion" (*Matter of Burton C. [Marcy C.]*, 91 AD3d at 1041 [internal quotation marks, brackets and citations omitted]). According the requisite deference to Family Court's factual findings and credibility determinations, and absent any contradictory expert evidence, we find that clear and convincing evidence supports Family Court's determination (see *Matter of Summer SS. [Thomas SS.]*, 139 AD3d at 1121).

Rose and Clark, JJ., concur.

Aarons, J. (dissenting). We respectfully dissent. We agree with the majority that petitioner demonstrated by clear and convincing evidence that respondent, as a consequence of his mental illness, was presently unable to adequately care for the children. Our departure stems from our view that petitioner failed to satisfy the clear and convincing standard to establish that respondent would be unable to adequately care for the children in the foreseeable future. In light of this failure, we would reverse.

Respondent is the father of two children (born in 2009 and

2014). In May 2015, petitioner filed a petition alleging that respondent was mentally ill and, due to such illness, he was unable to care for the younger child. The petition sought to terminate respondent's parental rights with respect to the younger child. In June 2015, petitioner filed another petition asserting the same allegations and seeking the same relief with respect to the older child. Following a hearing, Family Court granted the petitions seeking termination of respondent's parental rights.

In a proceeding to terminate a parent's parental rights based upon mental illness, petitioner bears the burden of demonstrating by clear and convincing proof that "the parent is presently, and will continue for the foreseeable future to be, unable to provide proper and adequate care for the child[ren] by reason of the parent's mental illness" (*Matter of Summer SS.* [*Thomas SS.*], 139 AD3d 1118, 1119 [2016] [internal quotation marks and citation omitted]; *see* Social Services Law § 384-b [4] [c]; *Matter of Dakota F.* [*Angela F.*], 110 AD3d 1151, 1153 [2013], *lv denied* 22 NY3d 1015 [2013]). In our estimation, petitioner's proof did not meet its burden (*see Matter of Arielle Y.*, 61 AD3d 1061, 1062-1063 [2009]; *Matter of Jennifer HH.*, 193 AD2d 850, 852 [1993]; *see generally Matter of Daniel Aaron D.*, 49 NY2d 788, 790 [1980], *revg* 66 AD2d 728 [1978]).

Petitioner relied largely on the testimony and report of Richard Liotta, a psychologist who, among other things, reviewed petitioner's records and respondent's treatment records, interviewed respondent and administered psychological testing. After concluding that respondent suffered from a myriad of mental conditions, Liotta stated, without equivocation, that respondent's mental illness rendered him unable to presently care for the children. When probed further by Family Court about such opinion, he responded, "I'm very clear about that."

Liotta, however, did not express the same level of conviction and resolve when giving his opinion as to whether respondent's mental illness rendered him unable to care for the children in the foreseeable future. Although Liotta ultimately responded "[y]es" to the question asking whether respondent's affliction rendered him unable to care for the children in the foreseeable future, he qualified that answer in his report by characterizing it as a "close call." While Liotta also explained in his report that respondent was at risk for an episodic relapse, he also noted that "[p]art of what makes the determination difficult is that [respondent] has the potential to be an adequate parent much of the time." Liotta noted the negative indicators weigh-

ing against respondent, but also highlighted a host of positive indicators, including respondent's desire to have his family together, his attempts at sheltering the children from his suspect behavior and that there has been more good than bad when he visits the children.

Indeed, Liotta testified that the foreseeable future question was "challenging" and that it was "a difficult decision." In an attempt to get a clarification about his opinion as to whether respondent was unable to care for his children in the foreseeable future, Family Court asked Liotta, "[W]ould it be adequate to state that your opinion is, yes, but it's a very close call?" Liotta responded, "Yes, because of the possible indicators that could lead to reasonable doubt regarding the foreseeable future question" and reiterated twice that it was "a close call."

In our opinion, Liotta's multiple "close call" characterizations in his report and testimony did not suffice for petitioner to meet the clear and convincing standard (see Matter of Daniel Aaron D., 49 NY2d at 790). Family Court noted in its decision that "it [was] critical to this action" what Liotta meant when using the term "close call." The court was nonetheless satisfied that the clear and convincing standard had been hurdled based upon Liotta's testimony that he was "85 percent to 90 percent" certain. In our view, however, Liotta's numerical qualification did not provide any clarity as to what Liotta meant by a "close call." Notwithstanding the 90% certainty in his opinion, Liotta did not trivialize the 10% margin of error and testified that "you know, 10 percent . . . is a pretty big amount when you're, you know, in terms of the, the certainty." As such, Liotta's use of numerical percentages to explain his "close call" characterization, coupled with his testimony that 10% could be "a pretty big amount," only muddled his opinion (see Matter of Dedrick M., 89 AD2d 781, 781 [1982]). Taking into account Liotta's admission that respondent could be an adequate parent under the right conditions, his repeated characterizations that the foreseeable future question was a "close call" and the lack of a definitive and unequivocal opinion by Liotta, we find that petitioner failed to show by clear and convincing evidence that respondent's mental illness rendered him unable to care for the children in the foreseeable future (see Matter of Hime Y., 52 NY2d 242, 248-249 [1981]; Matter of Dedrick M., 89 AD2d at 781).

Finally, the position of the attorneys for the children supporting termination of respondent's parental rights, while relevant, is not dispositive (see Matter of Gerber v Gerber, 133 AD3d 1133, 1138 [2015], lv denied 27 NY3d 902 [2016]; see

*generally* Matter of Gentile v Warner, 140 AD3d 1481, 1483 [2016]). Accordingly, we would reverse Family Court's order.

Garry, J.P., concurs. Ordered that the order is affirmed, without costs.