Matter of Noelia F. (Noel G.) (2023 NY Slip Op 01825)

Matter of Noelia F. (Noel G.)

2023 NY Slip Op 01825

Decided on April 6, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 6, 2023

534814
[*1]In the Matter of Noelia F., Alleged to be the Child of a Mentally Ill Parent. Clinton County Department of Social Services, Respondent; Noel G., Appellant.

Calendar Date:February 23, 2023

Before:Lynch, J.P., Aarons, Pritzker, Fisher and McShan, JJ. 

Michelle I. Rosien, Philmont, for appellant.
Clinton County Department of Social Services, Plattsburgh (Jeffrey C. Kehm of counsel), for respondent.
Andrew F. Bailey, Plattsburgh, attorney for the child.

McShan, J.
Appeal from an order of the Family Court of Clinton County (Timothy J. Lawliss, J.), entered January 18, 2022, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be the child of a mentally ill parent, and terminated respondent's parental rights.
Respondent is the mother of a child (born in 2011). In May 2020, respondent and the subject child were discovered by police "wandering" the City of Plattsburgh, Clinton County. The police brought respondent to the hospital, and she was involuntarily admitted for a mental health assessment. At that time, petitioner temporarily removed the child and placed her in foster care. Petitioner thereafter filed a neglect petition against respondent alleging, in sum and substance, that she had provided inadequate guardianship for the child by bringing the child to Clinton County from New York City without proper planning or support and that her persistent mental health issues impacted her ability to adequately parent the child. Respondent substantially admitted the allegations in the petition and the child was adjudicated as neglected. In July 2021, petitioner filed a petition seeking to terminate respondent's parental rights on the basis that respondent's history of unresolved mental illness rendered her at present, and for the foreseeable future, unable to provide proper and adequate care for the child. Following a fact-finding hearing, Family Court granted the petition and terminated respondent's parental rights. Respondent appeals.[FN1]
We affirm. "To terminate parental rights upon the ground of mental illness, the petitioning agency must demonstrate, by clear and convincing evidence, that the parent is — and for the foreseeable future will continue to be — unable to provide proper and adequate care for his or her children by reason of that parent's mental illness" (Matter of Adrianahmarie SS. [Harold SS.], 99 AD3d 1072, 1072-1073 [3d Dept 2012] [citations omitted]; see Social Services Law § 384-b [4] [c]). "To meet its burden, petitioner must provide proof of the illness and present testimony from appropriate medical witnesses particularizing how the parent's mental illness affects his or her present and future ability to care for the child" (Matter of Jazmyne II. [Meagan JJ.], 151 AD3d 1123, 1125 [3d Dept 2017] [internal quotations marks and citations omitted]; see Matter of Burton C. [Marcy C.], 91 AD3d 1038, 1039 [3d Dept 2012]). On this appeal, respondent concedes that she suffers from a mental illness and is presently unable to care for the child. Her primary contention is directed at Family Court's determination that she will be unable to care for the child in the foreseeable future, which she argues is unsupported by the record.
At the fact-finding hearing, petitioner presented, among other things, the report and testimony of Richard Liotta, a licensed psychologist who performed a court-ordered evaluation of respondent and [*2]concluded that respondent's mental illness rendered her unable to provide proper and adequate care for the child, presently or in the foreseeable future. Liotta testified that, as part of his evaluation, he reviewed, among other things, respondent's mental health records from various facilities and petitioner's records concerning the services provided to respondent, and conducted a phone interview with respondent. Based upon his evaluation, Liotta diagnosed respondent with "[b]ipolar I disorder, most typical episode manic with psychotic features"; "[o]ther specified schizophrenia spectrum and other psychotic disorder, with chronic ongoing persecutory delusions"; and "[o]ther specified trauma and stressor-related disorder, with ongoing stressors and a history of posttraumatic stress symptoms."[FN2] Liotta opined that respondent's bipolar symptoms were severe and impacted her ability to properly function, as evidenced by, among other things, her multiple past psychiatric hospitalizations as well as her erratic and extreme behavior. According to Liotta, respondent's behavior associated with her bipolar disorder, including her "general level of disorganized, poor judgment[ and] poor decision making[,] are likely to interfere with her ability to care for her child," in both the short- and long-term future. Liotta also noted that respondent has a lengthy history of psychotic symptoms and delusional thinking, which manifested in her feelings or beliefs that various entities, including petitioner, law enforcement and Family Court, were conspiring to take the subject child away and that those entities were sex trafficking the subject child. Liotta further opined that respondent's delusional thoughts and distorted impression that others were acting maliciously and trying to persecute her created a barrier for respondent to accept feedback and make positive changes in self-management.
Respondent contends that her past mental health treatment has been inconsistent, pointing to Liotta's concession that prior assessments had resulted in varying diagnoses and that her most recent outpatient treatment providers did not incorporate a treatment plan to address the varying diagnoses that Liotta had later made as part of his evaluation. However, it is our view that such testimony merely raises the "possibility that [her] condition could, with proper treatment, improve at some later date[, which] is an insufficient basis upon which to overturn Family Court's sound determination" as to her ability to appropriately parent in the foreseeable future (Matter of Adrianahmarie SS. [Harold SS.], 99 AD3d at 1074 [internal quotation marks and citation omitted]; accord Matter of Isaac YY. [Arielle YY.], 200 AD3d 1506, 1508 [3d Dept 2021]; see Matter of Shane PP, 283 AD2d 725, 728 [3d Dept 2001], lv denied 96 NY2d 720 [2001]). Importantly, Liotta qualified his opinion by noting that respondent's treatment records indicated that she was unreliable in reporting her medical history to [*3]her treatment providers and, relatedly, had demonstrated little insight into her mental health issues, essentially denying that she suffered from anything beyond general anxiety and posttraumatic stress disorder (see Matter of Jazmyne II. [Meagan JJ.], 151 AD3d at 1126-1127; Matter of Corey UU. [Donna UU.], 85 AD3d 1255, 1257 [3d Dept 2011], lv denied 17 NY3d 708 [2011]).[FN3] To this end, Liotta noted that several of her past providers had attempted to address her psychotic features as part of a bipolar diagnosis, including the use of medicinal intervention, which proved unsuccessful due to respondent's failure to comply with her treatment. In sum, Liotta ultimately opined that his overall prognosis for respondent's potential improvement was poor "given her history of noncompliance with treatment, the persistence of her symptoms and the severity of the symptoms." Thus, in the absence of any contradictory expert evidence rebutting Liotta's assessment, and according due deference to Family Court's credibility determinations, it is our view that the court's determination is supported by clear and convincing evidence (see Matter of Isaac YY. [Arielle YY.], 200 AD3d at 1508; Matter of Duane II. [Andrew II.], 151 AD3d 1129, 1132 [3d Dept 2017], lv denied 29 NY3d 918 [2017]; Matter of Summer SS. [Thomas SS.], 139 AD3d 1118, 1121 [3d Dept 2016]; Matter of Kaitlyn X. [Arthur X.], 122 AD3d 1170, 1172 [3d Dept 2014]).
Lynch, J.P., Aarons, Pritzker and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: At the hearing, the attorney for the child supported petitioner's position that termination of respondent's parental rights was justified. The attorney for the child maintains that position on this appeal.

Footnote 2: Liotta concluded that respondent's bipolar I disorder and schizophrenia spectrum and other psychotic disorder were the primary diagnoses and had an equal impact on respondent's functioning. Liotta also noted that respondent's bipolar and psychotic disorders would interact with each other in certain respects, as her disorganization and delusional beliefs were symptomatic of either diagnosis.

Footnote 3: To this point, Liotta suggested that it is very difficult to convince an individual of a diagnosis that the individual did not believe in, and that attempts at doing so could take several years, with no guarantee of success.