Salce v State of New York (2020 NY Slip Op 03577)





Salce v State of New York


2020 NY Slip Op 03577


Decided on June 25, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 25, 2020

528685

[*1]Lydia-Ann Salce, Appellant,
v
State of New York, Respondent.

Calendar Date: May 20, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Devine and Colangelo, JJ.


David A. Harper, Saratoga Springs, for appellant.
Letitia James, Attorney General, Albany (Dustin J. Brockner of counsel), for respondent.



Egan Jr., J.
Appeal from a judgment of the Court of Claims (Collins, J.), entered October 25, 2018, upon a decision of the court following a bifurcated trial in favor of defendant on the issue of liability.
During the early morning hours of August 11, 2011, claimant and her husband, Michael McKee, engaged in a physical altercation at their residence during which McKee was stabbed numerous times. Claimant was thereafter indicted for attempted murder in the second degree, two counts of assault in the first degree and two counts of assault in the second degree and, following a jury trial, was convicted of attempted murder in the second degree and two counts of assault in the first degree and sentenced to concurrent prison terms of 16 years on all three counts plus a period of postrelease supervision. Claimant appealed, and this Court reversed the judgment of conviction, finding that, although her convictions were supported by legally sufficient evidence and the verdict was not against the weight of the evidence, claimant was entitled to a new trial as the trial court improperly precluded the testimony of her expert witness and provided the jury an improper charge on the defense of justification (People v Salce, 124 AD3d 923, 926 [2015], lv denied 25 NY3d 1207 [2015]). In 2015, a second jury trial was conducted on the same charges, following which claimant was acquitted on all counts. As a result of her initial conviction, claimant was incarcerated from September 4, 2012 through January 13, 2015.
In July 2015, claimant commenced this action pursuant to Court of Claims Act § 8-b, seeking compensation for her unjust conviction and wrongful imprisonment. Following a bench trial on the issue of liability only, the Court of Claims dismissed the claim, finding that claimant failed to establish her innocence by clear and convincing evidence. Claimant appeals.
To prevail on a claim for unjust conviction and imprisonment pursuant to Court of Claims § 8-b, it was claimant's burden "to prove by clear and convincing evidence that (1) [she] was convicted of one or more felonies or misdemeanors, sentenced to a prison term and that [she] served all or a part of the term, (2) [her] conviction was reversed [and a new trial was ordered, and she was found not guilty at the new trial], (3) [she] did not commit any of the acts charged in the accusatory instrument, and (4) [she] did not cause or bring about [her] own conviction" (Romero v State of New York, 294 AD2d 730, 732-733 [2002], appeal dismissed 98 NY2d 727 [2002], lv denied 99 NY2d 503 [2002]; see Court of Claims Act § 8-b [5]; Ivey v State of New York, 80 NY2d 474, 479 [1992]). "The linchpin of the statute is innocence" (Ivey v State of New York, 80 NY2d at 479 [internal quotation marks and citation omitted]), as an acquittal, in and of itself, is not tantamount to a finding of innocence; it only demonstrates that the People failed to meet their burden of proving claimant's guilt beyond a reasonable doubt at trial (see Reed v State of New York, 78 NY2d 1, 7-8 [1991]). Thus, to meet her burden of presenting clear and convincing evidence of her innocence, claimant had to demonstrate that "the evidence makes it highly probable that what [she] claims is what actually happened" (NY PJI 1:64; see Matter of Duane II. [Andrew II.], 151 AD3d 1129, 1130-1131 [2017], lv denied 29 NY3d 918 [2017]), with said evidence being "neither equivocal nor open to opposing presumptions" (Solomon v State of New York, 146 AD2d 439, 440 [1989]; see Reed v State of New York, 78 NY2d at 9; Alexandre v State of New York, 168 AD2d 472, 472 [1990], appeal dismissed 77 NY2d 925 [1991]).
Claimant provided documentary proof demonstrating that she was convicted of multiple felonies, sentenced to a period of incarceration and served a portion thereof before her conviction was overturned, a new trial ordered and she was acquitted of all counts following the second trial. Accordingly, the first two elements of her claim were satisfied. The issue, therefore, distills to whether claimant presented clear and convincing evidence establishing that she was innocent of the crimes for which she was charged.
The evidence at trial established that, following claimant's marriage to McKee in February 2011, their relationship started to deteriorate in the spring of 2011 after McKee began drinking heavily and associating with a motorcycle club known as Prisoners of Fate. On August 2, 2011, claimant locked McKee out of their house and called the police after he had returned home drunk and purportedly threatened her; however, no charges were ever filed as a result of this incident. On the morning of August 10, 2011, claimant went to work and two of her coworkers recounted that claimant appeared upset and angry and she told them that, if she did not talk to a psychiatrist soon, she was "going to kill [McKee]." Later that same day, claimant met up with a friend to go for a walk and, according to the friend, claimant was angry and upset with McKee, indicated that she wanted to "beat [him] up" and spent the majority of their two-hour walk discussing her relationship issues before returning home. McKee, meanwhile, spent the afternoon and early evening of August 10, 2011 at a barbeque with members of his motorcycle club. At approximately 10:15 p.m., McKee caught a ride home with one of his friends and, as they pulled into claimant's driveway, claimant exited the house and started yelling and screaming at both McKee and his friend. McKee and his friend left the residence but McKee returned sometime after midnight on August 11, 2011. After claimant ultimately let McKee back inside the house, the two began arguing in the kitchen.
Claimant's and McKee's versions of what occurred thereafter provide starkly divergent accounts. According to McKee, at some point during their argument, he turned to leave the kitchen and, as he did so, claimant stabbed him twice in the back. He thereafter turned, pushed claimant away and punched her in the face in an effort to defend himself and wrestle away the knife that she was holding. She continued to attack him, however, stabbing him twice in the chest, which caused him to drop to one knee, whereupon she continued to stab him while screaming "you're done," inflicting a total of 12 to 14 stab wounds. Claimant, on the other hand, contends that McKee was heavily intoxicated when he returned home that evening and, during their ensuing verbal altercation, he threw a glass jar at her that shattered in the kitchen. She claims that, as she was cleaning up the broken glass, McKee grabbed her ponytail, spun her around, held up a large knife and threatened to kill her. McKee then punched her in the face and continued to punch her about the face, neck and body as the two of them fell to the floor. At some point during the melee, McKee dropped the knife and claimant was able to retrieve it and began "flailing" with it in an effort to defend herself until she was able to get free from McKee's grip. She then went and washed her hands before calling 911. Responding emergency personnel found McKee lying on the kitchen floor in a large pool of blood gasping for air. He was transported to the hospital where he was determined to be in critical condition as a result of suffering 12 to 14 cuts and stab wounds, including a bilateral pneumothorax.
Upon our review of the record and giving due deference to the Court of Claims' assessment of witness credibility, we find that the evidence presented supports dismissal of the claim on the ground that claimant failed to prove her innocence by clear and convincing evidence. Only claimant and McKee were present for the physical altercation that occurred on August 11, 2011 and each offered starkly contrasting versions of the incident, presenting "a classic he-said she-said credibility determination for [the court] to resolve" (People v Horton, 181 AD3d 986, 989 [2020] [internal quotation marks and citations omitted]). Although claimant argues that McKee's version of events should not have been accorded any weight by the Court of Claims given his prior inconsistent statement to police while he was in the hospital, the Court of Claims specifically addressed this statement, noting that it was taken "within hours of the incident at a time when he was hospitalized and heavily sedated."
Additionally, claimant's contention that she acted in self-defense, such that her conduct was justified, was not only directly contradicted by McKee, but the evidence demonstrates that she had been angry, upset and distraught with McKee the entire day prior to the incident, indicating at one point that she was going to kill him. Moreover, although she denied ever having seen the knife that was used during the incident, her daughter testified at her second criminal trial that the subject knife was the same one that claimant kept stored within a compartment in her bedroom headboard for years. The Court of Claims also did not err in discounting the testimony of claimant's expert witness to the extent that it was equivocal, potentially supporting both claimant's and McKee's versions of events.[FN1] The crux of claimant's innocence claim ultimately hinged on the issue of credibility. As such determinations are within the express purview of the Court of Claims, and, upon review, they are supported by the record evidence, we discern no reason to disturb same on appeal (see Groce v State of New York, 272 AD2d 519, 520 [2000]; Taylor v State of New York, 266 AD2d 385, 385 [1999], lv denied 94 NY2d 764 [2000]).
The Court of Claims appropriately determined that claimant's hearsay statement to a sheriff's deputy following the incident was not admissible as an excited utterance. "An excited utterance is one made under the immediate and uncontrolled domination of the senses, and during the brief period when consideration of self-interest could not have been brought fully to bear by reasoned reflection" (People v Vasquez, 88 NY2d 561, 579 [1996] [internal quotation marks and citation omitted]). In assessing whether such a statement was made prior to having an opportunity to reflect or fabricate, "the court must assess not only the nature of the startling event and the amount of time which has elapsed between the occurrence and the statement, but also the activities of the declarant in the interim" (People v Auleta, 82 AD3d 1417, 1419 [2011] [internal quotation marks, brackets and citations omitted], lv denied 17 NY3d 813 [2011]).
Here, although the time between when McKee was stabbed and when claimant provided her disputed statement to the deputy was admittedly brief, claimant's conduct and the circumstances following McKee's stabbing nevertheless demonstrate that she had ample time for thoughtful reflection. Notably, following the stabbing, claimant did not immediately call 911 and, instead, took time to twice wash her hands — both in the kitchen and bathroom — before ultimately using McKee's phone to place her 911 call. When police arrived, claimant had already exited her house and spoken to a state trooper before she provided the disputed statement to the sheriff's deputy. The trooper testified that, although claimant was "a bit upset," she was not hysterical or otherwise in any physical distress. Accordingly, given claimant's conduct and demeanor, the time for thoughtful reflection and the potential motivation to exculpate herself from criminal liability following the stabbing, we cannot say the Court of Claims abused its discretion when it determined that said statement did not fall within the excited utterance exception to the hearsay doctrine (see People v Vasquez, 88 NY2d at 579-580; Global Energy Efficiency Holdings, Inc. v William Penn Life Ins. Co. of N.Y., 180 AD3d 624, 624 [2020]; compare People v Johnson, 1 NY3d 302, 306-307 [2003]).
Nor did the Court of Claims err when it precluded admission of claimant's written statement to police following the incident. As relevant here, "[i]f upon cross-examination a witness' testimony is assailed — either directly or inferentially — as a recent fabrication, the witness may be rehabilitated with prior consistent statements that predated the motive to falsify" (People v McDaniel, 81 NY2d 10, 18 [1993]). Here, claimant sought to introduce during her direct testimony the written statement that she gave to police following the incident based solely upon a comment that defendant's counsel had made during his opening statement. An opening statement, however, "is not the evidentiary equivalent of confronting the [claimant] on cross-examination with a claim of recent fabrication and thus lacks the testimonial element required for the admission of a prior consistent statement" (People v Watson, 163 AD3d 855, 865 [2018], lv denied 32 NY3d 1009 [2018]). Further, defendant never relied upon a claim of a recent fabrication by claimant; instead, defendant maintained throughout its case that claimant's explanation of how the stabbing occurred had been false from its inception such that the hearsay exception for a prior consistent statement was not available under the circumstances (see People v McDaniel, 81 NY2d at 18; People v Davis, 44 NY2d 269, 278 [1978]; People v Watson, 163 AD3d at 865; Mooney v Osowiecky, 235 AD2d 603, 604 [1997]). Additionally, even assuming that the Court of Claims erred in not admitting claimant's statement to the sheriff's deputy and/or her written statement to police, on the record before us, we find any such error to be harmless, as the proffered evidence would not have had a substantial influence on bringing about a different verdict (see CPLR 2002; Nationstar Mtge., LLC v Davidson, 116 AD3d 1294, 1296 [2014], lv denied 24 NY3d 905 [2014]; Braunsdorf v Haywood, 295 AD2d 731, 733 [2002]; see also People v Hamilton, 176 AD3d 1505, 1508-1509 [2019], lvs denied 34 NY3d 1126, 1128 [2020]). To the extent not specifically addressed, claimant's remaining contentions have been reviewed and found to be without merit.
Garry, P.J., Mulvey, Devine and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Although claimant's expert testified that claimant's wounds were consistent with defensive action, he acknowledged that they could also have been caused by picking up broken glass. He also conceded that the pattern and distribution of McKee's wounds were also consistent with McKee's version of how the incident unfolded.