Marshall v State of New York (2025 NY Slip Op 51390(U))

[*1]

Marshall v State of New York

2025 NY Slip Op 51390(U)

Decided on May 2, 2025

Court Of Claims

Weinstein, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 2, 2025
Court of Claims

Arvel Marshall, Claimant,

against
The State of New York, Defendant.

Claim No. 142507

For Claimant:
Justin C. Bonus, Attorney At Law
By: Justin C. Bonus, Esq.
For Defendant:
Letitia James, New York State Attorney General
By: Akosua Goode, Esq., Assistant Attorney General

David A. Weinstein, J.

In the matter before me, claimant Arvel Marshall asserts a claim for unjust conviction and imprisonment under section 8-b of the Court of Claims Act. The claim arises out of Marshall's January 5, 2010 conviction in Kings County Supreme Court upon a jury verdict for murder in the second degree, for the shooting death of Moustapha Oumaria. Marhsall was ultimately sentenced to 25 years to life in prison (Claim ¶¶ 1, 11).
The claim states that, on August 9, 2024, Marshall appeared before Kings County Supreme Court on a motion to vacate his judgment of conviction, the motion was made pursuant to CPL § 440.10 subpart (1)(b), which provides for such vacatur when "[t]he judgment was procured by duress, misrepresentation or fraud on the part of the court or a prosecutor or a person acting for or in behalf of a court or a prosecutor, and subpart (1)(h), which applies when "[t]he judgement was obtained in violation of a right of the defendant under the constitution of this state or of the United States" (id., Ex A ["Aug 9 D&O"]). 
The Kings County District Attorney consented to the motion, and on such consent, the Kings County Supreme Court issued an August 9, 2024 Decision and Order, vacating the judgment of conviction (id.). In addition, based on the DA's representation that its office "no longer [had] sufficient evidence to prove defendant's guilt beyond a reasonable doubt," Supreme [*2]Court dismissed the indictment on the District Attorney's motion (id.). 
Claimant now moves for summary judgment on his section 8-b claim, on the ground that, during Marshall's August 9, 2024 exoneration hearing, the DA did not oppose claimant's CPL § 440.10 motion, which based on the argument that Marshall's constitutional rights were violated as set forth in subpart (1)(h) of the statue. Claimant argues this was an "actual innocence claim," and this establishes his entitlement to relief under section 8-b (Affirmation in Support of Justin Bonus, filed February 7, 2025 ["Bonus Aff"] ¶¶ 7-9).
In support of this argument, claimant submits a copy of the hearing transcript on his CPL § 440.10 motion (Bonus Aff, Ex C ["Tr"]). Appearing on behalf of the Kings County DA's Office was Assistant District Attorney Charles Lunnihan (Tr 2). At the outset of the hearing, the ADA advised the court:
"The People are joining the Defense motion to vacate the judgment of conviction under CPL Section 440.10 subsection 1 subsection B and subsection 1 subsection H, because the judgment was procured in part by misrepresentation on the part of the Court and the Prosecutor. And because the judgment in this case was obtained in violation of a right of the defendant under the constitution of this State or the United States" (id. at 3).
The ADA further explained that the District Attorney's Conviction Review Unit ("CRU") re-investigated Marshall's case and determined that the initial investigation process and resulting trial were:
"irreparably flawed such that defendant was denied his due process rights, and was not privy to evidence [surveillance video] that could have established his innocence. Such that his resulting conviction was fundamentally unfair. Following an exhaustive re-investigation, CRU has reached the inescapable conclusion that after having spent 16 years in prison the defendant's conviction cannot stand. In short Your Honor, this case represents a catastrophic failure of our system in every point" (id. at 3-4).
As part of the re-investigation, the surveillance video at issue was retrieved by the CRU and reviewed (id. at 7). According to the ADA, the video revealed two young men walking down the street toward the crime scene, which is just off screen (id.). Minutes later, two separate pedestrians witness an off screen occurrence in the direction of the crime scene, that causes them to leave the vicinity while looking over their shoulders, followed by the first two young men who come running from the direction of the crime scene and back into view of the surveillance camera (Tr 7-8) One of these young men, who was wearing a white shirt, is holding a "dark object" at his side (id.). The pedestrians return into view running toward the crime scene and looking back over their shoulders in the direction in which the two young men were running (id. at 8). The ADA asserted that:
"The inescapable conclusion is that the video depicts the actual shooter. The inadequacy of the Police investigation, the People's failure to disclose the video in a meaningful way, the lack of any real effort on Counsel's part to obtain and watch the video. Which presented multiple investigation leads, and partially corroborated an account the Defense investigators had received from an unnamed source that named an alternative suspect. As [*3]well as various issues with the identification procedures, and the improper treatment of Mr. Marshall by the Court deprived Mr. Marshall of his right to a fair trial. Sixteen years later for the reasons stated, we do not have confidence in the integrity of this conviction" (id.).
On this basis, the ADA expressed the view that Marshall's conviction should be vacated (id. at 9). He further stated that because "the opportunity of Mr. Marshall to use the video to his investigative advantage has gone stale, and deprived him of a chance to present a rebuttal defense, we believe that the indictment should be dismissed. We, therefore, join the Defense application before you today on these grounds" (id.).
After the ADA finished its argument, defendant's attorney concluded by representing to the court that the video presented "a clear indication of [his] client's innocence[,] [b]y clear and convincing evidence" (id.). Defense counsel further argued that defendant's CPL § 440.10 motion based on subpart (1)(h) for a violation of his constitutional rights, is a claim that that surveillance video provides clear and convincing evidence of the defendant is actually innocent (Tr 9-12).
At the close of the parties' oral arguments, the Court issued the following ruling from the bench:
"So based upon the evidence presented to me this afternoon, the motion to vacate the conviction is granted. And based on the People's further representation that they no longer have sufficient evidence to prove the defendant's guilt beyond a reasonable doubt, the motion to dismiss the indictment is granted and sealed" (id. at 12).
As noted during the ADA's statement, the DA incorporated its CRU "Report on the Conviction of Arvel Marshall" into its application to the court (Tr 3; Bonus Aff, Ex D [the "Report"]. In the Report's analysis section, the summary explains that "[d]efendant was convicted, under the theory that he acted alone, of shooting the deceased outside his building alongside three eyewitnesses. The eyewitnesses, the deceased's close friends, were all in their 20s, and described the shooter as young, 'a kid,' between 16 and 21. Defendant was 36" (Report 47).
The CRU determined that the surveillance video was "Brady material" and the prosecution was required to disclose the video to the defendant in accordance with Brady v Maryland (373 US 83, 87 [1963]) (id. at 48). This conclusion was reached because the "video was favorable evidence" in that it "captured the shooter walking to and fleeing the scene" (id. at 49). The CRU further concluded that "[i]t is beyond any reasonable doubt that . . . the footage depicted [a suspect fleeing] . . . [and] there is a reasonable possibility the verdict would have been different if the video had been disclosed" (id. at 50-51). 
In addition, the CRU opined that the "[n]ondisclosure of the video also denied defendant the right to effective assistance of counsel, [for] counsel could have investigated and attempted to locate [the pedestrians that] saw the shooter and possibly have found other witnesses who recognized the young suspects depicted running from the crime scene" (Report 53). It also found that the disclosure would have corroborated the potentially exculpatory information defense investigators obtained from an unidentified contact (id.). Finally, the CRU opined that non-disclosure impacted defendant's demeanor during the trial, which caused him to be chastised and [*4]demeaned during the proceedings by the trial judge in front of the jury (id. at 54). 
In addition, the CRU found that defense counsel failed to provide a proper defense due to multiple errors at trial and during preparation for trial; the prosecution made misstatements to the trial court about the contents of the video, and failed to watch the video with the appropriate software — which was available in the District Attorney's Office; and the Court acted improperly in admonishing the defendant for expressing his dissatisfaction with his attorney's performance and failure to obtain the video and present it to the jury — which caused the CRU to conclude that "[t]he court was transparent about its belief in defendant's guilt" (id. at 48-60). These errors, combined with the Brady violation led the CRU to concluded that:
"[D]efendant's judgment of conviction should be vacated. The Brady violation, counsel's and the People's errors, the court's improper conduct, and the insufficient police investigation denied defendant due process and a fair trial. Because, at this late stage, there is no avenue of investigation to locate witnesses seen in the surveillance footage or determine the identity of the contact, or investigate the information the contact supplied, the indictment should be dismissed" (id. at 61).
Based on the CRU Report, the transcript of the exoneration hearing and the reviewing court's determination, claimant argues that the vacature of his conviction and dismissal of the indictment was based on clear and convincing evidence of his actual innocence, and such was implicitly conceded by the District Attorney's Office (Bonus Aff ¶¶ 11-18).
Defendant has submitted an affirmation from counsel in opposition to the motion. The State notes that the reviewing court's vacature determination did not include any discussion of the facts of the underlying criminal case or any legal analysis to vacate the conviction pursuant to CPL § 440.10 (1)(b) and (h), and relied entirely on the District Attorney's consent to vacatur (Affirmation in Opposition of Akosua K. Goode, Esq., dated February 18, 2025 ["Goode Aff"] ¶ 4). In other words, the State notes that there were no judicial findings of actual innocence or whether claimant, by his own conduct, caused or contributed to his own conviction (id.). Therefore, it argues that at this stage in the litigation, when discovery regarding the underlying criminal case — including the files of the New York City Police Department and relevant depositions — has not occurred, the claimant's application is premature (id. ¶¶ 5-16, 26-31). 
It is the State's contention that while the information attached to the claim and used in support claimant's motion may be sufficient for pleading a cause of action under section 8-b, it is insufficient to demonstrate liability on the part of the State so as to warrant summary judgment as a matter of law on the issues of claimant's actual innocence or whether his own conduct contributed to his conviction (id. ¶¶ 17-25, 32-42). More specifically, defendant argues that the State is not subject to collateral estoppel or res judicata based on any alleged statements or omissions made by the Kings County District Attorney's Office, as the DA is not in privity with the State of New York for purposes of Court of Claims Act § 8-b (id. ¶¶ 33-37).
In a reply affirmation, claimant's counsel argues that there is no question of fact that Marshall's actual innocense was proven by what its characterized as the "clear and convincing" evidence submitted in support of summary judgment (Affirmation in Reply of Justin Bonus, Esq., filed March 4, 2025 ["Reply Aff"] ¶ 2). In asserting this argument, claimant relies solely on the CRU Report, the exoneration transcript, and the Aug 9 D&O (id. ¶ 3). Counsel further [*5]argues that the State of New York was represented by the District Attorney's Office at the vacatur proceedings, and since it did not oppose Marshall's CPL § 440.10(1)(h) argument based on his actual innocense, it has conceded to claimant's actual innocence for purposes of the present claim (id. ¶¶ 6-9).
Discussion
To establish a claim for wrongful conviction under Court of Claims Act § 8-b, claimant must prove by clear and convincing evidence, inter alia, that he "he did not commit any of the acts charged in the accusatory instrument or his acts or omissions charged in the accusatory instrument did not constitute a felony or misdemeanor against the state" — in other words, the "linchpin of the statute is innocence" (Ivey v State, 80 NY2d 474, 479 [1992][emphasis added][citation and internal quotation marks omitted]). The fact that claimant's conviction has been reversed and the indictment dismissed, by itself, does not demonstrate Marshall's actual innocence of the crime for which he had been convicted, and does not relieve him of his burden to show innocence by clear and convincing evidence (see Ivey, at 480 ["none of the grounds for reversal or vacature under State law exactly correlate with innocence" and reversal and acquittal on retrial notwithstanding "[c]laimants must still prove innocence by clear and convincing evidence"]). Moreover, on a summary judgment motion, the moving party must present evidence "sufficient . . . to demonstrate the absence of any material issues of fact" (Baba-Ali v State, 19 NY3d 627, 639 [2012] [internal quotation marks and citation omitted]). 
Thus, in the context of a Court of Claims § 8-b claim, a claimant must demonstrate his actual innocence by evidence that clearly and convincingly proves such — with no question of fact remaining (id. [motion for summary judgment requires section 8-b claim be proven by clear and convincing evidence]). In other words, claimant has the burden to demonstrate that "the evidence makes it highly probable that what [he] claims is what actually happened. . . with said evidence being neither equivocal nor open to opposing presumptions" (Salce v State, 184 AD3d 1037, 1039 [3d Dept 2020][internal quotation marks and citation omitted]).
Here, claimant's argument rests on the positions set forth by the District Attorney's Office in issuing the CRU Report and in joining the § 440.10 motion. Primarily, this argument is premised on the assertion that the DA was representing and acting on behalf of the State of New York during the criminal exoneration proceedings before the Kings County Supreme Court, and thus the State is bound by the assertions and admissions made by the DA (see Reply Aff ¶ 9 [State cannot contest Marshall's claim of innocence in this action "after his innocence was already conceded to by the State at the criminal level"]). 
But that is not true. Although collateral estoppel [FN1]
applies in both civil and criminal [*6]proceedings and precludes the relitigation of issues necessarily resolved at an earlier proceeding, for this to occur there must be "an identity of parties and issues" (People v Kent 235 AD3d 1094, 1096-1097 [3d Dept 2025]; see also Kaufman v Eli Lilly & Co., 65 NY2d 449 [for collateral estoppel to apply, "the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and . . . the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination"]). That was simply not the case here.
The principal that a district attorney "represents the People in the distinctive and customary usage of that term for prosecutorial purposes" it true enough (Kent, 235 AD3d at 197 [internal quotation marks and citation omitted] *3). However, "[t]hat authority . . . has constitutional and statutory geographic limitations" (id.). Under County Law § 700, the authority of the district attorney is limited to conducting "all prosecutions for crimes and offenses cognizable by the courts of the county for which he or she shall have been elected or appointed" (id.) [emphasis added]; see also Matter of Kelley v McGee, 57 NY2d 522, 534-535 [1982] [finding that a district attorney's responsibilities are on a local level in criminal matters arising solely within the county]). Therefore, "the State is not subject to liability in the Court of Claims for the consequences of official acts of a district attorney . . . because he is not an officer or employee of the State" (Fuller v State of New York, 11 AD3d 365, 366 [1st Dept 2004]).
Indeed, section 2 of the Public Officers Law defines the term "State Officer . . . by listing all those who are to be so considered and it does not include prosecutors" (Fisher v State of New York, 10 NY2d 60, 61 [1961]). Rather, although a district attorney is said to be acting "in the name of the People of the State[,] he does not act as a State officer or employee in any such sense as would make the State liable for his wrongdoing" (id.; see also Ritter v State, 283 AD 833 [3d Dept 1954] [same]). Although the claimant's present argument is that the State should be bound by the positions taken and statements made by the DA in court proceedings — rather than the State be held liable for its own wrongdoing — the same principle applies. Thus, claimant's argument that the KCDA failed to object to claimant's assertion of innocence establishes such in this proceeding is not correct, because the District Attorney was not acting as a State officer or employee in any sense as would make the State liable in the Court of Claims (see Fuller, 11 AD3d at 366; see also Pinchback v State of New York, 59 Misc 3d 368, 377-378 [Ct Cl 2017] [district attorney is not an officer of the State, nor is he otherwise in privity with the State for purposes of civil liability]; Shakur v State of New York, 54 Misc 3d 674, 680 [Ct Cl 2016] [in the context of a section 8-b claim, there is no unique relationship between the district attorney and the New York State Attorney General to establish privity to support collateral estoppel]).
Not only is there no privity or identity of parties as necessary to support a claim for collateral estoppel, there is no indication in the record that the August 9, 2024 determination of the Kings County Supreme Court was premised on a finding of "actual innocense," and, thus, there is no factual determination on such that would bind this Court in any case
For collateral estoppel to apply in the circumstances before me, the same issue must have been "necessarily decided" in the ruling on the earlier motion (see Abacus Fed. Sav. Bank v Lim, [*7]75 AD3d 472, 473 [1st Dept 2010]). Although a claim of actual innocence may be raised on a CPL § 440.10(1)(h) motion (see People v Hamilton, 115 AD3d 12, 26 [2d Dept 2014]) — and this was one of the grounds raised by Marshall in the vacatur proceeding — claimant's motion papers do not reveal that this was the basis on which Kings County Supreme Court made its ruling.
The Court's brief order stated only that it was granting the motion to vacate, noting that "based on their representation that they no longer have sufficient evidence to prove defendant's guilt beyond a reasonable doubt, the People's motion to dismiss the indictment is granted" (Goode Aff, Ex 2). Claimant's argument is essentially that (1) one of the grounds for vacatur (section 440.10[1][h]) encompasses a claim of innocence; (2) claimant asserted such a ground for relief under this subpart of section 440.10; and (3) this subpart is one of the two cited by the Court on which it granted the motion. But at best, this is only an argument that it is possible that actual innocence was implicitly found by Supreme Court; it is a far cry from showing that this issue was "necessarily decided."
Indeed, as noted above, the District Attorney's argument was that the prosecution's failure to disclose the video was a violation of Marshall's due process rights because the prosecution did not turn over material evidence to him. That could support vacatur of the conviction under either CPL § 440-10 subpart (1)(h), based on the constitutional due process violation, or subpart (1)(b), on the ground that the judgment was procured by misrepresentation or fraud on the part of the prosecutor or a person acting for or in behalf of the prosecutor [FN2]
(see Baba-Ali, 19 NY3d at 636 [while simple Brady violation alone does not fall within this provision, "an element of prosecutorial misconduct going well beyond a simple Brady violation" may be "consistent with the sort of misrepresentation and fraud described by CPL 440.10(1)(b)"]). What is missing from the record is any indication that the Court necessarily found that Marshall was actually innocent.
Claimant contends that the DA "implicitly conceded" to Marshall's innocence by not objecting to his assertion of such (see Bonus Aff ¶ 18). The DA, however, made extensive filings explaining why it supported Marshall's application, and while it raises significant questions about the trial process and the strength of the evidence against him, nowhere did it indicate that it had determined him to be innocent.
Finally, claimant argues that the CRU report, alone, is clear and convincing evidence of [*8]Marshall's innocence, and therefore supports summary judgment in his favor. The key points of this argument are summarized as follows:
"Here, the CRU conducted an intensive and detailed investigation which has already been disclosed to the State. Significantly, within that investigation, Janiqua Callier stated that the men in the video, [who the] State [FN3]has admitted are the true killers, did not fit the description of Mr. Marshall, thereby eliminating him as a suspect. But most importantly, Tete Benissan, one of the eyewitnesses, admitted that the men involved with the murder and on the video looked like teenagers. This effectively eviscerated Benissan's identification of Marshall. Two separate people who have seen this video have eliminated Arvel Marshall as one of the men in the video. As such, the CRU investigation proved Mr. Marshall was innocent"
(Reply Aff ¶ 10). 
For its part, the State says the following about the CRU Report: (1) the Report reflects "the opinions as expressed by the [CRU] . . . which have no evidentiary value"; (Goode Aff ¶ 25); (2) the report and the statements in it are not "admissible evidence" (id. ¶ 31); and (3) it is based largely on "video surveillance footage which does not actually capture the shooting but which depicts two young men who are unable to be clearly identified from the video walking toward the shooting location and then hurriedly away from the location following the shooting," which "arguabl[y] . . . establishes only that there were additional suspects near the scene at the time of the shooting" (id. ¶ 39).
Upon consideration of these arguments, I note several problems with claimant's effort to obtain summary judgment on the basis of the Report. In particular, the Report is an out-of-court statement that claimant is offering to establish the truth of his claim of actual innocence, and therefore constitutes hearsay (see generally Hochhauser v Electric Ins. Co., 46 AD3d 174, 178 [2d Dept 2007] ["[h]earsay is a statement made out of court . . . offered for the truth of the fact asserted in the statement"]). As a hearsay document, the CRU Report cannot be used to support summary judgment in the movant's favor unless there is some grounds for admissibility, which claimant has not suggested [FN4]
(see Yassin v Blackman, 188 AD3d 62, 65-67 [2d Dept 2020] [*9][uncertified police accident report and hearsay contained within was inadmissible and not to be considered on affirmative motion for summary judgment]; Coleman v Marclas, 61 AD3d 569, 569 [1st Dept 2009] [in denying summary judgment, motion court properly disregarded the uncertified police report and unauthenticated photographs]; Nahrbeski v Molnar, 286 AD2d 891, 891 [4th Dept 2001] [police and accident reports were inadmissible hearsay, and thus could not support affirmative motion for summary judgment]). Indeed, many of the statements relied upon by claimant, such as those of Callier and Benissan, reflect multiple layers of hearsay (see Yassin, 188 AD2d at 66 [court could not consider statements within a police report on summary judgment motion unless report itself, as well as the statements within it, met hearsay exceptions]). What claimant is asking is that I decide the case as a matter of law on the basis of the unsworn views of individuals cited in a hearsay document, regarding a video that is not in the record before me. And even if I were to consider the CRU Report, it does not address whether Marshall is actually innocent, but rather discusses how production of the video by the prosecution at the time of trial would have provided claimant with potentially favorable evidence that was material to the case (Report 47-54). I cannot grant summary judgment on this basis. 
Finally, claimant's affirmative motion does not make any showing that he did not "by his own conduct cause or bring about his own conviction," which it is claimant's burden to prove by clear and convincing evidence (see Court of Claims § 8-b[5][d]). Only the reply affirmation of counsel even addresses this issue, on the basis of a conclusory assertion (see Reply Aff ¶ 14).
In light of the foregoing, I find that claimant has failed to meet his summary judgment burden.
Accordingly, it is ORDERED that claimant's motion no. M-101851 is denied, and a conference shall be scheduled following the filing of this Decision and Order, to address the status of discovery.
Albany, New York
May 2, 2025
DAVID A. WEINSTEIN
Judge of the Court of Claims
Papers Considered
1. Notice of Motion and Affirmation in Support of Justin Bonus, Esq., filed February 7, 2025, with Exhibits annexed thereto.
2. Affirmation in Opposition of Akosua K. Goode, Esq. dated February 18, 2025, with Exhibits annexed thereto.
3. Affirmation in Reply of Justin Bonus, Esq., filed March 4, 2025.

Footnotes

Footnote 1:Claimant declines to specify whether he is relying on collateral estoppel or res judicata (see Reply Aff ¶ 3 n 2). Since claimant is arguing that the Court is bound by findings of fact made by Supreme Court in the section 440.10 proceeding, it is the former doctrine that is at issue — but it makes no difference. That is because "[c]ollateral estoppel . . . is a component of the broader doctrine of res judicata which provides that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action" (see Highlands Ctr., LLC v Home Depot U.S.A., Inc., 149 AD3d 919, 921 [2d Dept 2017] [internal quotation marks and citation omitted]). Thus, the requirement that there be identity of parties and issues apply to both doctrines.

Footnote 2:Indeed, there is a problem at the heart of claimant's argument. It is premised on the fact that notwithstanding that the vacatur order cited two separate provisions of section 440.10, it was actually based on the finding of a constitutional violation under section 440.10(1)(h) — that violation being that Marshall was convicted as "actually innocent" (see e.g. Bonus Aff ¶ 14 ["Arvel Marshall met all the requirements that Hamilton described would establish actual innocence and Mr. Marshall's conviction was vacated and subsequently dismissed pursuant to CPL § 440.10(1)(h)"]). But dismissal under section 440.10(1)(h) is not listed as a basis for section 8-b relief — for such, in this case, claimant must rely on paragraph (1)(b) (see Court of Claims Act ¶ 8-b[3][b][1]; see also Baba-Ali, 19 NY3d at 633 n5 [paragraph (1)(h) was "[c]onspicuously omitted" from the provisions on which a wrongful conviction claim could arise]). Unless some exceptional circumstance applies here, claimant's argument would appear to require a fine parsing of Supreme Court's ruling — arising under one provision for purpose of qualifying for section 8-b relief, but under another for purposes of collateral estoppel.

Footnote 3:By the "State," claimant is referring to the position — as claimant characterizes it — taken by the DA in the CRU Report.

Footnote 4:In claimant's reply affirmation, he relies on Fowler v State of New York (81 AD3d 495 [1st Dept 2011]), for the proposition that the CRU Report is acceptable in support of his summary judgment motion. In Fowler, the State moved to dismiss the claim for failure to meet the pleading requirements of section 8-b of the Court of Claims Act. In denying the motion, and finding that claimant had properly pled an 8-b claim, the Appellate Division held that testimony of alibi witnesses adduced at trial, the consent of the District Attorney's Office in vacating the conviction, and the newly discovered evidence exonerating claimant as the shooter were all factual allegations that support a finding that the claim satisfied the pleading requirements of Court of Claims Act § 8-b(4) (81 AD3d at 495-496). This decision has no bearing as to whether a district attorney's investigative report can be considered on a motion for summary judgment on the issue of claimant's actual innocence.